## Case No. 14,078.

### TOLER v. ARMSTRONG

[4 Wash. C. C. 297.] [1]

Circuit Court, D Pennsylvania. Oct. Term,
1822.[2]

CONTRACTS—VALIDITY — PUBLIC POLICY — ILLEGAL
TRANSACTIONS—WHEN ENFORCEABLE—RULE.

1. It is a salutary rule, founded on morality
and good policy, and which recommends itself
to the good sense of every one, that no man
ought to be heard in a court of justice, who
seeks to enforce a contract founded in or arising
out of moral or political turpitude.

2. The rule itself has sometimes been carried
to inconvenient lengths; the difficulty being not
in any unsoundness of the rule itself, but in its
fitness to the particular case to which it has
been applied. Does the taint in the original
transaction infect and vitiate every contract
growing out of it, however remotely connected
with it? This would be to extend the rule be-
yond the policy which produced it, and would
lead to the most inconvenient consequences.

3. The rule, as now clearly settled, is, that
where the contract grows immediately out of,
or is connected with an illegal or immoral act, a
court of justice will not lend its aid to enforce
it. And if the contract be in part only connect-
ed with the illegal transaction, and growing im-
mediately out of it, though it be in fact a new
contract, it is equally tainted by it.

[Cited in Tufts v. Tufts, Case No. 14,233.
Quoted in Bailey v. Milner, Id. 740.]

[Cited in brief in Bancroft v. Dumas, 21 Vt.
459. Cited in Galligan v. Fannan, 89 Mass.
[7 Allen] 256; Thomas v. Brady, 10 Pa. St.
170. Cited in brief in Atkins v. Johnson, 43
Vt. 79; Rheem v. Naugatuck Wheel Co., 33
Pa. St. 363: Melchoir v. McCarty, 31 Wis.
254.]

4. But if the promise be unconnected with the
illegal act, and is founded on a new considera-
tion, it is not tainted by the act; although it was
known to the party to whom the promise was

[1] [Originally published from the MSS. of Hon.
Bushrod Washington, Associate Justice of the
Supreme Court of the United States, under the
supervision of Richard Peters, Jr., Esq.]
[2] [Affirmed in 11 Wheat. (24 U. S.) 258.]

made; and although he was the contriver and
conducter of the illegal act.

[Cited in Tufts v. Tufts, Case No. 14,233.]
[Cited in Morris' Run Coal Co. v. Barclay
Coal Co., 68 Pa. St. 189.]

This was an action to recover upwards of
$2,000, being so much paid by the plaintiff
for freight, shipping charges, duty, charges
of importation, appraisement, land carriage
to Boston, law and other expenses, on cer-
tain goods shipped at St. John's in New
Brunswick, in December, 1813, for account
of the defendant, in the schooner George, and
consigned to the plaintiff to forward to the
defendant, residing in Philadelphia. The
schooner George was captured by the Fly,
and brought into Ellsworth, in the district
of Maine, on the 13th of January, 1814, and
there seized and libelled by the collector of
that port, upon the ground of a collusive cap-
ture. The cargo was delivered to Dekoven,
the owner and commander of the Fly, who
brought in the George, upon admiralty stipu-
lations given by Dekoven, and Smead, as his
surety. The plaintiff informed the defendant
of the arrival of the goods, and gave his bond
to Smead to indemnify him for becoming the
surety. The defendant applied to the plaintiff
for an order on Dekoven for the goods belong-
ing to him, which was given, upon the faith
of the defendant's assurances that he would
indemnify the plaintiff, and reimburse him all
expenses, and other sums which he might be
obliged to pay on account of these goods.
The defendant received the goods from De-
koven, and paid him upwards of $5,000, as
upon a sale of the goods to him by Dekoven.
The goods were finally condemned to the
United States, upon the ground of a collusive
capture by the Fly. See the case of The
George, 2 Wheat. [15 U. S.] 278; 1 Wheat.
[14 U. S.] 408. It appeared by the testimony
in the cause, that the plaintiff had also goods

shipped on his own account in the George, and that he was the consignee of the goods of the defendant and others; that he paid all the expenses and other charges incurred on account of this shipment, and in defending the admiralty proceedings against the cargo; and charged the defendant with his proportion of the sums so expended.

It was contended by Mr. Peters, for the defendant, that this was an illegal importation from the country of the enemy during war, in which the plaintiff was concerned. That in the scheme for importing these goods into the United States, by means of a collusive capture, the plaintiff was concerned; as appeared by his conducting and managing the whole of the business, paying all the expenses, many of them incurred before the capture; and defending the admiralty proceedings after the seizure and libel; and by many other circumstances, to be collected from the evidence. This being the case, the plaintiff could not recover in an action so clearly growing out of an illegal transaction. But at all events, as the defendant had paid Dekoven for the goods, the plaintiff could have no just charge against him for the sums paid on account of the same goods.

C. J. Ingersoll, for the plaintiff, insisted that though the plaintiff should be considered as owner of part of the cargo of the George, that circumstance cannot impeach the validity of the defendant's engagement to indemnify him against whatever sums he, the plaintiff, might have to pay on account of the defendant's goods, it being fully proved that the plaintiff had no interest of any sort in the goods imported by the defendant. That the charge against the plaintiff that he was concerned in the scheme of introducing these goods into the United States, by means of a collusive capture, has no colour for it in the evidence. The true rule is, that unless the promise be the immediate offspring of the illegal act, the person entitled under it is not prevented from maintaining his action. Bird v. Appleton, 8 Term R. 562; Farmer v. Russel, 1 Bos. & P. 295; Ex parte Bulmer, 13 Ves. 313; Hodgson v. Temple, 5 Taunt. 181.

C. J. Ingersoll, for plaintiff.
Mr. Peters, for defendant.

WASHINGTON, Circuit Justice (charging jury). The rule of law, under which the defendant seeks to shelter himself against a compliance with his contract to indemnify the plaintiff for all sums which he might have to pay on account of the goods shipped from New Brunswick for the defendant, and consigned to the plaintiff, is a salutary one, founded in morality and good policy; and which recommends itself to the good sense of every man as soon as it is stated. The principle of the rule is, that no man ought to be heard in a court of justice, who seeks to enforce a contract founded in, or arising out of moral or political turpitude. The rule itself has sometimes been carried to inconvenient lengths; the difficulty being, not in any unsoundness in the rule itself, but in its fitness to the particular cases to which it has been applied. Does the taint in the original transaction infect and vitiate every contract growing out of it, however remotely connected with it? This would be to extend the rule beyond the policy which produced it, and would lead to the most inconvenient consequences. Carried out to such an extent, it would deserve to be entitled a rule to encourage and protect fraud. So far as the rule operates to discourage the perpetration of an immoral or illegal act, it is founded in the strongest reason; but it cannot safely be pushed farther. If, for example, the man who imports goods for another, by means of a violation of the laws of his country, is disqualified from founding any action upon such illegal transaction for the value or freight of the goods, or for other advances made on them, he is justly punished for the immorality of the act, and a powerful discouragement from the perpetration of it is provided by the rule. But after the act is accomplished, no new contract ought to be affected by it. It ought not to vitiate the contract of the retail merchant, who buys these goods from the importer; that of the tailor, who purchases from the merchant; or of the customers of the former, amongst whom the goods are distributed in clothing, although the illegality of the original act was known to each of those persons at the time he contracted.

I understand the rule, as now clearly settled, to be, that where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it. And if the contract be in part only connected with the illegal transaction, and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it. The case before supposed, of an action for the value of goods illegally imported for another, or for freight and expenses attending it, founded upon a promise, express or implied, exemplifies a part of the above rule. The latter part of it may be explained by the following case: as if the importation was the result of a scheme to consign the goods to the friend of the owner, with the privity of the former, that he might protect and defend them for the owner, in case they should be brought into jeopardy, in consequence of some intended violation of law: I should consider a bond or promise, afterwards given by the owner to his friend to indemnify him for his advances on account of any proceedings against the property, or otherwise, as constituting a part of the res gestæ, or of the original transaction, though it purports to be a new contract. For it would clearly be a promise growing immediately out of, and connected with the illegal act. It would be in fact all one transaction; and the party to whom the promise was made would, by such a contrivance, contribute, in effect, to the

success of the illegal measure. But if the promise be unconnected with the illegal act, and is founded on a new consideration, it is not tainted by the act; although it was known to the party to whom the promise was made, and although he was the contriver and conductor of the illegal act. Thus if A. should, during war. contrive a plan for importing goods from the country of the enemy on his own account, by means of smuggling or of a collusive capture, and in the same vessel should be sent goods for B.; and A. should, upon the request of B., become security for payment of the duties; or should undertake to become answerable for expenses on account of a prosecution for the illegal importation, or should advance money to B. to enable him to pay those expenses; these acts, constituting no part of the original scheme, here would be a new contract, upon a valid and legal consideration, unconnected with the original act, although remotely caused by it; and such contract would not be so contaminated by the turpitude of the offensive act, as to turn A. out of court when seeking to enforce it; although the illegal introduction of the goods into the country was a consequence of the scheme projected by A. in relation to his own goods. Whether the plaintiff had any interest in the goods imported by the defendant from New Brunswick; or was the contriver of, or concerned in a scheme to introduce those goods, or even his own, if he had any, into the United States, by means of a collusive capture, or otherwise; or consented to become the consignee of the defendant's goods, with a view to their introduction; are questions which must depend upon the evidence, of which you must judge. It ought however to be remembered, that it would seem from the letters of introduction of the defendant to the plaintiff, some time after this importation had taken place, that these gentlemen were, at that time, strangers to each other.

It is necessary, before I conclude my observations upon this part of the case, to observe, that what was said by the supreme court in the case of The George [supra]. with respect to the evidence, is not to be regarded by the jury, so as to prejudice either of the parties in this cause. As to the account and receipt of Dekoven for the value of the goods delivered by him to the defendant, it has nothing to do with the action now before you; which is brought to recover certain sums of money expended by the plaintiff for the defendant, in relation to those goods, upon the faith of the defendant's promise to indemnify the plaintiff for making the advances. If, notwithstanding the plaintiff's order upon Dekoven to deliver the goods to the defendant, he chose to purchase them from Dekoven, it furnishes no reason why the promise to the plaintiff should not be complied with.

The jury having been out some time, returned into their box, and requested the instruction of the court upon the following questions, viz. whether Toler must have an interest in Armstrong's goods to constitute him a participator in the voyage? or, if simply having goods on board will constitute him such?

WASHINGTON, Circuit Justice. The mere circumstance of the plaintiff having goods on board would not constitute him a participator in the illegal importation, so as to affect his right of recovery in this action; but being interested in the goods imported by the defendant, would have that effect.

Verdict for plaintiff for the whole of his demand.

An exception was taken to this charge. and the judgment was affirmed on writ of error. 11 Wheat. [24 U. S.] 258.