### J. W. RIGGINS v. BEN SASS ET AL.

#### Decided April 20, 1910.

**1.—Broker—Commissions—Irrelevant Evidence.**

In a suit by a land agent for commissions alleged to be due for the sale of land, the issue being what was the contract as to compensation, a letter purporting to have been written by a prospective purchaser to the owner of the land and by him forwarded to the agent, considered, and held subject to the objection that it was not material or relevant to the issue.

**2.—Witness—Impeachment—Collateral Issue.**

Whether or not a witness wrote a certain letter being a collateral issue in a case, the letter was not admissible in evidence for the purpose of impeaching the witness, and an insinuation by counsel on cross-examination of the witness that he had written the letter for fraudulent purposes, was an aggravation of the error in admitting the letter in evidence.

**3.—Appeal—Defective Brief and Assignments.**

An assignment of error which is not accompanied by a statement of the relevant evidence or which embraces more than one subject-matter of alleged error, will not be considered on appeal.

Appeal from the County Court of Fayette County. Tried below before Hon. Geo. Willrich.

*Brown & Lane,* for appellant.—All evidence of collateral facts and matters immaterial and not relevant to any issue being tried, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, should be

excluded when objected to, for the reason that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them.

Questions on cross-examination eliciting testimony which merely tends to prejudice and excite the passions of the jury against the opposite party should not be allowed.

The letter of Gilstrap to Riggins introduced in evidence by plaintiff's counsel over the objection of defendant Riggins was a collateral matter, not relevant to any issue being tried, and its introduction was for the purpose of drawing the minds of the jury from the main fact at issue and to create in the minds of the jurors a distrust of the integrity of the defendant Riggins. Guthrie v. Lyons, 98 S. W., 432; Kellogg v. McCabe, 92 Texas, 199; 1 Greenleaf, sec. 52; Missouri, K. & T. Ry. Co. v. Creason, 101 Texas, 335; Price v. Wakeham, 48 Texas Civ. App., 339; Hazard v. Western Commercial Assn., 54 Texas Civ. App., 110.

*John T. Duncan,* for appellee.

JAMES, CHIEF JUSTICE.—Ben Sass brought the suit against J. W. Riggins and G. A. Heilig, alleging that in or about February, 1907, Heilig, as agent for Riggins, sold certain lands for Riggins for $34,386 cash, for which service Riggins agreed to pay Heilig five percent commission, which was $1719.30, which was the usual and customary commission on such matters; that afterwards Riggins paid Heilig $1000, leaving a balance due the latter of $719.30, payment of which has been requested and refused. That on or about August, 1908, Heilig assigned the claim to plaintiff, guaranteeing its payment, whereby Riggins is primarily and Heilig secondarily liable to plaintiff. The prayer was for judgment against both defendants.

Heilig made no answer. Riggins pleaded by demurrer and general denial, and specially alleged that it is true he engaged Heilig to sell the land, and setting forth a letter from him to Heilig dated December 15, 1906, the terms of which he alleges Heilig accepted and undertook to sell the land for $16.50 an acre, for a commission of $1000, which sum he has been paid.

Plaintiff by supplemental petition denies that the contract was as alleged by Riggins, and alleges that Riggins verbally agreed to pay him five percent, which agreement was subsequently confirmed.

The verdict was for plaintiff for the sum claimed with interest.

We overrule the first assignment of error, which is that the evidence did not support the verdict and required a verdict for the defendant. The testimony established the employment of Heilig and that some agreement as to compensation was made. The sole issue developed was as to the terms of the agreement in reference to the compensation, and upon this question the testimony presented a clear issue of fact.

We overrule also the second assignment of error, which was that the court erred in not instructing a verdict for Riggins as against Sass because the undisputed evidence shows that if Riggins was

indebted to any person it was to Heilig and not the plaintiff Sass, and that any moneys, if any, recovered in this proceeding were to go to the payment of a debt of Heilig to a certain bank, and no part of it was to be appropriated to Sass, and no part of it belonged to the latter. It was shown that Sass was security for Heilig on an unpaid note at the bank, and the claim was assigned to him by Heilig to indemnify him. In these circumstances Sass had an interest in the collection of the claim, as well as title thereto by reason of the assignment.

The third assignment raises a question of the admissibility of certain testimony introduced on behalf of plaintiff. It appears that the following letter was introduced by plaintiff, from Riggins to Heilig:

"Dear Heilig: Here is a letter from Wheelock. You note he offers to pay $3,140 cash and bal. 8% int. for 207 acres on 'far side of this pasture.' He afterwards offers all cash. This 207 acres is not as good as most any. part of the land. You can show this to your parties if you like. I only want to prove what I say. But I say again, do not urge the deal at $16.50 per acre. Let them turn the offer down and I will sell to some Bryan people at $17.50 or maybe $20 per acre. But be sure and make it plain and clear that my land is not for sale at less than $20 per acre unless the deal is closed and money paid before February 1. Please send Dr. Gilstrap's letter back to me. Fair warning to all.
"Yours very truly,
"J. W. Riggins."

The letter which the above refers to and which was enclosed with it was as follows:

"Wheelock, Texas, January 21, 1907.
"Mr. J. W. Riggins,
"Waco, Texas.
"Dear Sir: I wish to say that I will take the 207 acres of land on the far side of your pasture at $20 per acre. Will pay $3,140 dollars in cash down, the rest $1,000 in two notes, No. 1, $500 due January 1, 1908; No. 2, $500 due January 1, 1909, at 8% int., notes payable on or before these dates. Please make deed as soon as possible, as I desire to put some of the land in cultivation. Submit the deed to Mr. Robt. Armstrong, my attorney, for approval.
"(Signed) W. P. Gilstrap, M. D."

The last named letter was admitted in evidence over defendants' objection and protest. Thereupon, over defendants' objection, counsel for plaintiff pursued the following cross-examination of defendant Riggins:

"Who wrote that letter? (meaning the last named letter). Whose handwriting is it in?" Ans. "I can't tell. I do not know."

"Didn't you write that letter yourself?" Ans. "I did not.". "Is it not in your handwriting?" "It is not." "How is it that Mr. Gilstrap's name is written in lead pencil?" Ans. "Sir, I never wrote

that letter nor instigated it." "How is it that his name is written in lead pencil when the letter is written in ink? Is it not written in the same color of ink that your letter was written with?" Ans. "I do not know that it is or not."

Q. "Is Dr. Gilstrap an educated man?"

A. "I don't know whether he is or not. I know that I got that letter out of the postoffice at Waco from him."

Q. "This was sent to Mr. Heilig for the purpose of being shown to these gentlemen to urge them up?"

A. "If it had a purpose it was to corroborate a statement in my letter."

Q. "Dr. Gilstrap offers $20 an acre for the most inferior part of your land?"

A. "I did not say that."

Q. "Didn't you say, 'You note he offers to pay $3140 cash and balance 8% interest for 207 acres on far side of your pasture?' He afterwards offered all cash?"

A. "That letter shows for itself."

Q. "Your letter is dated January 25. This letter of Dr. Gilstrap to you is dated January 21. Now you say in this letter that he afterwards offered all cash. So he offered it between the 21st and 25th. You have not got that letter?"

A. "No, sir. I think that on the 23d I was down there. I think we then had been there. The 207 acres is not as good as most of any other part of the land. This is true of the prairie land."

The bill discloses that defendant objected to all of said evidence, "because immaterial and irrelevant to any issue in the cause; because the manner of the examination of the witness was insulting, provoking and harassing, and intended to be so, and because said evidence and testimony was offered by plaintiff for the purpose of misleading the jury into the belief that the defendant Riggins was trying to perpetrate a fraud upon the purchasers of the land, and thus to improperly and wrongfully prejudice the rights of the defendant, as it was calculated to do."

The court qualified the bill by stating that the evidence was admitted on cross-examination for the purpose of testing the credibility of the witness, and in the opinion of the court the conduct of plaintiff's counsel was not undignified or insulting, that it may have been provoking and harassing, and that the court thought the examination was conducted within proper limits.

We think the letter was improperly admitted. The issue in the case was what was the agreement or understanding as to Heilig's compensation. There was nothing in the letter which tended to throw any light upon that issue. It was not a part of the letter written to Heilig, although enclosed with it. The objection that it was not material or relevant to the issue ought to have been sustained. The trial judge admitted it upon the view that it served to test the credibility of defendant. Its usefulness in that respect lay in the probable fact that there was a resemblance between the ink and the handwriting of both the letters, and the fact that the Gilstrap letter was written in ink but signed in lead pencil, thus

affording some basis for a suspicion or argument against defendant that he had manufactured the Gilstrap letter. But this was clearly collateral to the issue because it had no bearing upon it, and such method could not be resorted to for impeachment purposes. Missouri, K. & T. Ry. Co. v. Creason, 101 Texas, 335; Kellogg v. McCabe, 92 Texas, 202. The examination of defendant in connection with this letter was an aggravation of this error. The assignment is sustained.

The fourth assignment is not entitled to consideration under the rules, as it is not accompanied by any statement; and it embodies more than one subject matter of error.

The fifth assignment complains of plaintiff's counsel being allowed to ask defendant on cross-examination, "in a provoking, undignified and insulting manner," certain questions, because "this testimony was immaterial and irrelevant to any issue in the cause; because the manner of the examination was provoking, insulting and harassing and was intended to be so, and because said questions were asked and obtained by plaintiff's counsel for the purpose of misleading the jury into the belief that defendant Riggins was trying to perpetrate a fraud upon the purchasers of the land and thus to improperly and wrongfully prejudice the right of this defendant, as it did do." This assignment of error is manifestly multifarious and contrary to the rules and can not properly receive consideration. One error it assigns is that the testimony was foreign to the issue. Another is that the demeanor of counsel was improper. These are separate and distinct questions. Reversed and remanded.

*Reversed and remanded.*