## In re FRISCHKNECHT.

(Circuit Court of Appeals, Second Circuit. April 13, 1915.)

### No. 207.

BANKRUPTCY ⬩387—CONFIRMATION OF COMPOSITION—REVESTING OF PROPERTY IN BANKRUPT.

Under Bankr. Act July 1, 1898, c. 541, § 70f, 30 Stat. 565 (Comp. St. 1913, § 9654), providing that "upon the confirmation of a composition offered by a bankrupt the title to his property shall thereupon revest in him," money in the hands of a third person, belonging to a bankrupt, arising out of a transaction prior to the bankruptcy and which had not been reduced to possession by the trustee, on confirmation of a composition at once revested in the bankrupt, free of any claim or right of the trustee, and became subject to attachment by a creditor whose debt was not provable or dischargeable in the bankruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 603–605, 607–616; Dec. Dig. ⬩387.]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

This cause comes here from the United States District Court for the Southern District of New York, on petition to review an order dated December 22, 1914, denying a motion in bankruptcy proceedings to compel certain creditors of the bankrupt to release an attaching lien.

On February 16, 1914, a petition in involuntary bankruptcy was filed against John Frischknecht to have him adjudicated an involuntary bankrupt, and on May 4, 1914, he was duly adjudicated a bankrupt. Two days prior to the filing of the petition in bankruptcy Frischknecht had made an assignment for the benefit of creditors to Henry B. Singer, and as such assignee Singer received $87,463.55. Subsequently Singer was elected the trustee of the bankrupt. Prior to the filing of the involuntary petition in bankruptcy Frischknecht had assigned certain outstanding accounts to Knauth, Nachod & Kuhne, bankers, for advances thereon made, which accounts exceeded the amount of the advances made, and after repayment of the indebtedness to the banking firm there remained a credit in favor of Frischknecht or of his estate of about $1,340.

Charles Hirschhorn and Fred Hirschhorn are the owners of the premises in the city of New York which were leased by them to Frischknecht prior to the bankruptcy proceedings under two certain leases for a period of 10 years, expiring February 1, 1921, at an annual rental of $8,500; and on or about October 3, 1914, the Hirschhorns instituted an action in the state court in New York against Frischknecht for the sum of $5,077.03 for rent due under the leases for the months of March, April, May, June, July, August, September, and October. Frischknecht had paid the rent for the premises prior to March.

John Frischknecht is a nonresident of the country, it being alleged that he resides in St. Gall, Switzerland, and pursuant to the provisions of the New York Code of Civil Procedure, a warrant of attachment in the action was procured on that ground.

On May 9, 1914, the bankrupt made an offer to his creditors in composition in bankruptcy of 60 cents on the dollar, to be paid in cash to the creditors, which was signed and accepted by a majority in number and amount of the claims filed. The cash amount required to pay the creditors under the composition, and required to be deposited in court pursuant to the Bankruptcy Act, was, as stated by the District Judge, $70,000. This did not include trustees' and attorneys' compensation and disbursements, but apparently included

the commissions of the referee. The attorneys all waived in writing the deposit in the composition proceeding of a sum sufficient to pay their fees.

The sum of $70,000 was deposited by the trustee in bankruptcy on September 1, 1914, in the Equitable Trust Company of New York. The expense of the administration of the bankruptcy proceedings were concededly not paid, and the only funds available for that purpose was the excess of $614.69 remaining of the deposit to meet the composition proceeding and the sum of $1,340, the moneys remaining in the hands of the bankers.

On September 14, 1914, an order was made by the referee in bankruptcy which provided: (1) That the attorneys for the petitioning creditors were entitled to the sum of $200 for their services and $40 for their disbursements, and the trustee was directed to pay the same. (2) That the attorneys for the trustee were entitled to an allowance for services of $2,250 and $85.32 for their disbursements, and the trustee was directed to pay the same. (3) That the attorneys for the bankrupt were entitled to an allowance for services of $1,500 and to the sum of $70.14 for disbursements, and these the trustee was likewise directed to pay.

The entry of this order was consented to by the trustee's attorneys and by the bankrupt's attorneys. Thereafter, and on October 5, 1914, the attorneys for the trustee made a motion for the payment out of the moneys deposited in the composition proceeding of the allowances made to the attorneys, etc., pursuant to the order of the referee made on September 14, 1914. That order recited the fact that it appeared that there were moneys at that time deposited in the composition available for the performance of the order. It is not denied that the order of October 5, 1914, has been complied with, and that whatever sums were filed were paid out of the moneys deposited in the composition proceeding.

On December 14, 1914, a motion was made that an order issue compelling the attaching creditors to release the attachment upon moneys and outstanding accounts of the bankrupt in the hands of Knauth, Nachod & Kuhne, and directing them to turn over to the trustee any and all moneys, in their possession representing a surplus of the accounts assigned to them by the bankrupt prior to his bankruptcy, as well as any and all uncollected outstanding accounts which they at that time had in their possession by virtue of that assignment. The motion was denied in all respects in an order dated December 22, 1914. And it is this order which the trustee asks this court to vacate and set aside and to grant him the relief prayed for.

Myers & Goldsmith, of New York City (Emanuel J. Myers, of New York City, of counsel), for petitioner.

Rose & Paskus, of New York City (Benjamin G. Paskus and Jacob Scholer, both of New York City, of counsel), for respondents.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The Bankruptcy Act provides two modes of procedure in the administration of a bankrupt's estate. One of these modes authorizes the bankrupt after his adjudication to make a composition with his creditors. The bankrupt, after he has been examined in open court or at a meeting of his creditors and after he has filed in court the schedule of his property and the list of the creditors required to be filed by bankrupts, may offer terms of "composition" to his creditors. This he does by tendering a certain amount to the creditors in lieu of that which they would ultimately receive upon the distribution of the assets of the estate in the other and more usual mode of administration. The composition which the bankrupt offers must be accepted in writing by a majority in number of all creditors whose claims have been allowed, which number must represent a majority in amount of such claims. It is without effect,

however, unless it is confirmed by the court, and unless the amount tendered and necessary to pay all debts which have priority and the cost of the proceedings has been deposited subject to the order of the judge and in such place as he designates. Section 12 of the Act. A composition thus made restores the estate to the bankrupt, frees him from all his debts provable and dischargable in bankruptcy. Remington on Bankruptcy, § 2346. And the act in section 70, subdivision "f," expressly declares that:

"Upon the confirmation of a composition offered by a bankrupt, the title to his property shall thereupon revest in him."

It appears in this case that after the bankrupt had filed the schedules of his liabilities and at the first meeting of the creditors duly and regularly held, and after he had been examined at such meeting, he submitted an offer of compromise which was signed by a majority in number and amount of claims filed. This offer of composition was on the basis of 60 per cent. on the dollar. An order to show cause was issued and served upon the creditors directing them to appear and show cause why the composition offered by the bankrupt should not be confirmed; and on October 1, 1914, it was duly confirmed in an order which recites that:

"The application for the confirmation of the composition having duly and regularly come on to be heard, and it appearing that said composition is for the best interests of the creditors, and that the bankrupt has not been guilty of any acts or failed to perform any of the duties which would be a bar to his discharge, and that the offer and its acceptance are in good faith and have not been made or procured by any means, averments or acts contrary to the acts of Congress referring to bankruptcy," etc.

Thereafter the trustee deposited with the Equitable Trust Company of New York the sum of $70,000 to cover a composition on the basis of 60 per cent. on the dollar. This sum was sufficient to cover all the items and amounts required under the bankruptcy law to be paid, as follows: (1) Creditors entitled to priority; (2) costs of the proceedings; (3) creditors whose claims had been scheduled, filed and approved; (4) creditors whose claims had been scheduled but which had not been filed. These various items, as appears from the schedules, were as follows:

| | |
|---|---|
| Creditors entitled to priority | $ 2,395.00 |
| Costs of the proceedings | 464.70 |
| Creditors whose claims had been scheduled and approved | 63,172.82 |
| Creditors whose claims had been scheduled but not filed | 2,312.52 |
| | $68,345.04 |

After the payment of the above items there was left in the hands of the trustee a balance of $1,654.96. But of this $259.44 would be required for a claim to be adjusted. To expedite and facilitate the composition proceeding by making the cash deposit of $70,000 required for that purpose, on August 18, 1914, the attorneys for the petitioning creditors, the attorneys for the bankrupt, and the trustee waived the deposits in the composition proceeding of a sum sufficient to pay their service fees and disbursements as attorneys for the creditors and bankrupt, as well as attorneys for the trustee.

The claim of the creditors Hirschhorn is for rent which accrued after the bankruptcy. The claim was one, therefore, not provable in bankruptcy; it being well settled that a landlord cannot maintain a claim against the estate of his tenant for any rent accruing under the lease after commencement of the proceedings in bankruptcy. As the composition only discharged the bankrupt from debts provable in bankruptcy, the claim of the Hirschhorns survived. As soon as the composition offered by the bankrupt was confirmed by the court the Hirschhorns began their suit against him in the New York court, alleging that he was indebted to them for rent in the sum of $5,077.03, and they attached the money in the possession of the bankers, Knauth, Nachod & Kuhne, which it is claimed is due from them to the bankrupt.

The attaching creditors assert that the right to money now in the possession of the bankers is because of the confirmation of the composition, and that by virtue of the language of Bankr. Act, § 70, subd. "f," the money had revested in the bankrupt and so became subject to the attachment. The trustee in bankruptcy, however, asserts that, while the right to the money in the hands of the bankers revested in the bankrupt, it did so subject to all judgments, decrees, and orders of the bankruptcy court, and all rights to and equities imposed upon and attaching to the bankrupt's estate and in force at the time of the order confirming the composition; that while the trustee did not have immediate manual or actual physical possession, and had not obtained or reduced to possession the funds in the banker's hands, those funds at the time of the confirmation of the composition were the property of the bankruptcy estate, and that the confirmation of the composition did not destroy or annul the adjudicative force of the order of September 14th, which granted to the attorneys certain allowances for their services; that at that time the trustee was by force of the Bankruptcy Act vested with the title to the balance of the fund in the hands of the bankers and to which they asserted no claim; that that money was in custodia legis and as such not subject to attachment.

The persons in whose interest the trustee seeks to have the attachment set aside are the persons who expressly waived in writing in the composition proceeding the deposit of any money to pay the expenses of administration. They are the attorneys for the bankrupt, the attorneys for the trustee, both as attorneys for the trustee and as attorneys for petitioning creditors, and the trustee himself. If counsel choose to waive payment of their fees in order to make the sum so small that deposit can be made under a composition, so that the composition can be put through, this court is strongly opposed to their thereafter resuscitating their claims and insisting that they should be paid out of the estate. The bed they made for themselves they should lie in. If the bankrupt benefited by their waiver, being thus enabled to effect a composition, we think he is the one who should pay them.

But, however that may be, we have no authority under the law to grant the petition of the trustee. We do not agree with him in thinking that the moneys or the accounts in the hands of these bankers, which they obtained from this bankrupt prior to his bankruptcy, were in custodia legis at the time of the attachment. When the court confirmed

the composition, the title to these moneys and accounts under the Bankruptcy Act at once revested in the bankrupt; and such moneys and accounts might have been forthwith handed over to the bankrupt by the bankers without asking the permission of the trustee, or the bankrupt without the consent of the trustee could have maintained an action against the bankers to recover the same. We cannot import into the act what Congress left out of it. The language of the act is that upon confirmation of a composition the title of the bankrupt to his property shall "thereupon revest in him."

The funds which have been attached, and which the trustee is seeking to reach, have never been in the actual custody of the trustee, and formed no part of the sum deposited in the composition proceeding, and the trustee has no right now to reduce them into his possession. The confirmation of the composition operated to supersede the proceedings in bankruptcy, and the Bankruptcy Act operated automatically to revest the bankrupt with the title to his property.

Judgment affirmed.