GUARANTY TRUST CO. OF NEW YORK v. McCABE et al.[1]

(Circuit Court of Appeals, Second Circuit.   March 11, 1918.)

No. 169.

1. REMOVAL OF CAUSES ⬡➝106—REMAND—WAIVER.
    Where, after the removal of a cause to the federal court, plaintiff specially appeared and moved to remand, plaintiff's subsequent amendment of the complaint, the motion to remand having been denied, was not a waiver of its rights.

2. BANKRUPTCY ⬡➝387—COMPOSITION—TRUSTEE AS ASSIGNEE OF CHOSE IN ACTION.
    Where a composition offer provided that the receivers and the bankrupts should convey the entire bankrupt estate, both partnership and individual, to one who had been selected by the creditors to act as trustee in their behalf in carrying out the details of the composition, the trustee selected by the creditors was a mere voluntary assignee of the choses in action; the bankruptcy court's approval of the composition and its sanction of the assignment putting the property of the bankrupt estate outside its power.

3. VENUE ⬡➝17—OBJECTIONS—WAIVER.
    It has long been settled that a defendant may insist upon or waive his objections to the venue.

4. REMOVAL OF CAUSES ⬡➝112—JURISDICTION—WAIVER.
    Where the jurisdiction of the federal court depends upon diversity of citizenship under Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [Comp. St. 1916, § 1033]) § 51, plaintiff in case of removal has the right to insist upon or waive his objection to the jurisdiction because the district is not the proper district.

5. REMOVAL OF CAUSES ⬡➝102—REMAND—JURISDICTION.
    Members of a New York partnership, all of whom were not all citizens of the Southern district of New York, assigned to a citizen of that state claims against nonresident defendants.   An action thereon, begun in the New York courts by attachment against the property of such defendants, was removed to the Southern district of New York.   Judicial Code, § 28 (Comp. St. 1916, § 1010), allows removal of causes on the ground of diversity of citizenship to the proper district, while section 51 declares that, where jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either plaintiff or defendant.   Held that, as the New York partners could not have maintained an action against the nonresident defendants in the Southern district, their assignee, who for the purposes of jurisdiction is controlled by the citizenship of his assignors, could not sue in the Southern district, and the cause, having been removed thereto, should be remanded.

6. REMOVAL OF CAUSES ⬡➝34—ASSIGNEES.
    Where plaintiff in the New York courts sued nonresidents on a claim assigned by members of a New York firm, the citizenship of his assignors will control the jurisdiction of the federal court on removal of the cause.

    Learned Hand, District Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Guaranty Trust Company of New York, as substituted trustee of S. H. P. Pell & Co., a partnership, against W. Gordon

[1] Certiorari denied by Supreme Court May 6, 1918.   247 U. S. ——, 38 Sup. Ct. 427, 62 L. Ed. ——,

McCabe, Jr., and another, which was begun in the state court and removed to the federal court. There was a judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions to grant plaintiff's motion to remand the cause.

Writ of error to review a judgment in favor of defendants entered on a directed verdict. Plaintiff in error was plaintiff below and defendants in error defendants below.

Myers & Goldsmith, of New York City (Emanuel J. Myers, Gordon S. P. Kleeberg, and Josiah Canter, all of New York City, of counsel), for plaintiff in error.

Miller & Auchincloss, of New York City (David Hunter Miller and Williams St. John Tozer, both of New York City, of counsel), for defendants in error.

Before WARD, Circuit Judge, and LEARNED HAND and MAYER, District Judges.

MAYER, District Judge. At the threshold of this case is the question of jurisdiction. It is necessary to state only such facts as are germane to this question.

On June 14, 1916, plaintiff, as substituted trustee of S. H. P. Pell & Co., a partnership (hereinafter called Pell & Co.), commencel an action in the New York Supreme Court, New York county, to recover $133,328.34 with interest, as assignee of three claims: (1) A balance due on account between defendants and Pell & Co. (first and second causes of action); (2) a balance due on account between defendants and W. R. Craig & Co., which was assigned to Pell & Co. (third cause of action); and (3) a balance due on account between defendants and E. & C. Randolph which was assigned to Pell & Co. (fourth cause of action).

On November 25, 1914, Pell & Co. and the several members thereof were adjudicated involuntary bankrupts in proceedings duly had in the Southern district of New York. On January 25, 1915, their offer of composition in bankruptcy was duly confirmed and carried out.

The court appointed receivers, but a trustee in bankruptcy was not appointed; the bankruptcy proceeding having been terminated by the order confirming the composition offer and its performance.

The offer provided, among other things, that the receivers and the bankrupts should convey the entire bankrupt estate (both partnership and individual) to John W. Jay, who had been selected by the creditors to act as trustee in their behalf in carrying out the details of the composition, and this was approved and confirmed by the order of the District Court on January 25, 1915, directing the transfer of the entire bankrupt estate to Jay.

· The offer of composition provided for the contingency of Jay's resignation and for filling the resultant vacancy by selection by seven creditors called an "executive committee." Under this procedure, plaintiff ultimately was selected as substituted trustee, and Pell & Co. and the receivers transferred all their assets to Jay, and, the terms of the composition having been fully performed, the bankrupts were released as

provided in their offer and by section 14, subd. c, of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 550 [Comp. St. 1916, § 9598]).

Among the assets which came into plaintiff's hands were the three claims referred to supra.

Plaintiff obtained a warrant of attachment for $91,566.14 (first and second causes of action) in the New York Supreme Court, and the New York sheriff levied on property of defendants within the New York jurisdiction. The warrant did not apply to the third and fourth causes of action, and as these causes of action were stricken out by order of the court, and no error is assigned, no further reference need be made to them. The first cause of action was also stricken out, but the second cause of action on which plaintiff went to trial included all the allegations of the first cause of action.

Thereafter removal proceedings were had in the state court on the ground of diversity of citizenship, and, the cause having been removed to the District Court of the United States for the Southern District of New York, plaintiff, on October 2, 1916, as its first step, appeared specially, objected to the jurisdiction of the District Court, and moved to remand the case to the New York Supreme Court because of lack of jurisdicton, for reasons which will be discussed infra. This motion was denied by order dated October 5, 1916.

Defendants at all times were inhabitants of Charleston, in the Eastern district of South Carolina. The partnership of S. H. P. Pell & Co. (assignors of the first and second causes of action) was composed of three citizens of the state of New York, two of whom were residents of the Southern district of New York and one of the Eastern district of New York. The present plaintiff is a New York corporation, having its principal place of business in the Southern district of New York.

At the trial, immediately after plaintiff's opening, defendants, addressing themselves to the merits, moved to dismiss, whereupon plaintiff moved to amend the complaint in certain respects and leave so to amend was granted and the trial then proceeded, with the result, as heretofore stated, that a verdict was directed in favor of defendants.

The contentions of defendants in support of the judgment are that: (1) Plaintiff, by moving to amend at the trial, waived the question of venue and submitted to the jurisdiction; (2) plaintiff was not the assignee of a chose in action; and (3) in any event, removal was a matter of absolute right.

[1] 1. We are unanimous in the view that, after plaintiff had specially appeared and moved to remand, it had protected and preserved its rights in that regard. The cases, inter alia, where waivers have occurred, are those where an amendment of a pleading has been made by the party seeking remand prior to his motion to remand.

It would be plainly unjust to deny to a litigant who, against his will, is compelled to submit to the jurisdiction, the same rights and privileges as to amendments to pleadings, as those which are accorded to any other litigant who may seek or submit to the jurisdiction.

[2] 2. Jay and this plaintiff were voluntary assignees of the choses in action and not trustees in the sense that title devolved upon them

by operation of law. The offer of composition comprehended a method of distribution through Jay or his successors, and for that purpose Jay· was selected as the medium to whom the bankrupts' property should be intrusted and by whom it should be distributed.

He was thus a mere assignee of these choses in action selected by agreement between the bankrupts and the creditors. The approval of the. offer of composition by the court and its sanction of the assignment put the property of the bankrupt estate outside the court's power and terminated the jurisdiction of the court over both the property and the transferee or assignee thereof. In re Hollins, 229 Fed. 349, 143 C. C. A. 469; Id., 238 Fed. 787, 151 C. C. A. 637; In re Frischknecht, 223 Fed. 417, 139 C. C. A. 11.

We are unanimous in holding that Jay, and therefore plaintiff, each became a voluntary assignee of the controverted choses in action.

[3-5] 3. Whether the cause should have been remanded depends on whether the Southern district of New York is the "proper district" as provided in section 28 of the Judicial Code.

Considering first the citizenship and residence of the members of the firm of Pell & Co., the assignors, plaintiff could have brought its action against defendants in the United States District Court for the Eastern District of South Carolina, but at no time could it have brought its action in the United States District Court for the Southern District of New York because all the members of Pell & Co. were not residents of the Southern district of New York. Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635; Interior Construction Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401.

In Ex parte Wisner, 203 U. S. 449, at page 451, 27 Sup. Ct. 150, 51 L. Ed. 264, it was held:

"In order to make a suit removable under section 2 of the act of 1887–1888, it must be one which the plaintiff could have brought originally in the United States Circuit Court, to which it would be removed by original process."

It has long been settled that a defendant may insist upon or waive his objection to venue (Interior Construction Co. v. Gibney, supra), but it is also settled by Ex parte Moore, 209 U. S. 490, 506, 28 Sup. Ct. 706, 52 L. Ed. 904, 14 Ann. Cas. 1164, that in a case where jurisdiction depends upon diversity of citizenship (Judicial Code, § 51) the plaintiff, in case of removal, also has the right to insist upon or waive his objection to the jurisdiction because the district is not the "proper district," i. e., either the residence of plaintiff or of defendant.

As therefore Pell & Co. could not have brought the action originally in the District Court for the Southern District of New York, and as, on removal, plaintiff objected and moved to remand, there was no waiver by plaintiff, and the court had not jurisdiction.

This conclusion, we agree, must be arrived at under the authority of Ex parte Wisner, supra, and Ex parte Moore, supra, unless the latter case has been overruled, and it is urged in that connection that Matter of Tobin, 214 U. S. 506, 29 Sup. Ct. 702, 53 L. Ed. 1061, and Matter of. Nicola, 218 U. S. 668, 31 Sup. Ct. 228, 54 L. Ed. 1203, have overruled Ex parte Moore.

Some confusion has arisen in the interpretation of the Tobin and Nicola Cases. It has been thought by some (for instance, in Sagara v. Chicago, R. I. & P. Ry. Co. [C. C.] 189 Fed. 220) that the holding in the Tobin and Nicola Cases was based on the proposition that mandamus was not the proper remedy; but neither the opinion in the Tobin Case nor the chronological history of the cases of Matter of Tobin, Nicola, and Ex parte Harding, 219 U. S. 363, 31 Sup. Ct. 324, 55 L. Ed. 252, 37 L. R. A. (N. S.) 392, justify this conclusion. Ex parte Harding, supra, was submitted and decided after the Tobin and Nicola Cases. In Ex parte Harding the court frankly disapproved Ex parte Wisner so far as that case held mandamus to be the proper remedy. Surely, if the Supreme Court had come to this conclusion when it decided the Tobin and Nicola Cases, it would have so stated.

An examination of the record in the Tobin Case confirms what the brief opinion of the court upon analysis makes clear. In that case, as well as in the Nicola Case, plaintiff was an alien. The only District Court where Tobin or Nicola could have brought suit originally was where the respective defendants were inhabitants. It will be noted that section 51 of the Judicial Code makes two classifications, as follows:

(1) "And, except as provided in the six succeeding sections, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant."

(2) "But where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

As Tobin and Nicola were not citizens, the second classification did not apply to their cases.

There was therefore but one district where the respective defendants in Tobin and Nicola could be sued, i. e., the district whereof they were respectively inhabitants. The alien plaintiff could select no other, and, if the defendants chose to waive this privilege or right, neither the statute nor any judicial construction thereof conferred upon these alien plaintiffs any right to object. On the other hand, where the parties are citizens of different states and the action is founded only on that fact, the statute clearly authorizes the bringing of the suit in one of two places, i. e., the residence of the plaintiff or the defendant, and, as held in Ex parte Moore, supra, when the suit is brought elsewhere, either plaintiff or defendant has the right to object to removal on the ground that such removal takes the cause to a district other than the residence of the plaintiff or defendant.

The majority of the court therefore is of opinion that the Tobin and Nicola Cases did not in any manner affect nor relate to the point decided by Ex parte Moore, supra, but were concerned with the consideration of an entirely different part of section 51 of the Judicial Code from that necessarily considered in Ex parte Moore, supra. Finally, it may be added that, if the Supreme Court had intended to disapprove Ex parte Moore, it may be assumed that it would have so stated, particularly as in Ex parte Moore and Ex parte Harding the court did not hesitate to point out certain respects in which it discard-

ed some views and expressions set forth· in Ex parte Wisner. Holding as we do that Ex parte Wisner (so far as applicable) and Ex parte Moore control the case at bar, we appreciate that situations may arise such as are illustrated by counsel and referred to in the dissenting opinion. The answer is that statutes must be construed as enacted and as interpreted by controlling authority, and, if they are inadequate or create unexpected situations, the remedy, if one is desired, is (as may be tritely observed) by legislation; but meanwhile existing rights must be determined by the law as it stands.

Legislative attempts to limit jurisdiction sometimes do lead to incongruous results because it is not always possible to foresee the combination of litigant personnel which may or may not allow jurisdiction; but, while many federal statutes, because of their subject-matter, have increased the volume of litigation, the general tendency of congressional legislation has been to cut down rather than enlarge the jurisdiction of the United States courts as is illustrated by the increase of the jurisdictional amount from $2,000 or $3,000, by the elimination in the Judicial Code of the provision in section 739 of the Revised Statutes (Comp. St. 1916, § 1033) allowing suit to be brought in a district where a person "is found at the time of serving the writ," by situations such as occurred in Smith v. Lyon, supra, and more recently by the provision as to nonremovability in the federal Employers' Liability Act of April 5, 1910, c. 149, 35 Stat. 65 (Comp. St. 1916, §§ 8657–8665). Ulrich v. New York, N. H. & H. R. Co. (D. C.) 193 Fed. 768.

[6] Finally, in answer to the contention that this plaintiff, a resident of the Southern district of New York (and not its assignors), is "the plaintiff" within the meaning of section 51, we need refer only to the previous decision of this court in Consolidated Rubber Tire Co. v. Ferguson, 183 Fed. 756, 106 C. C. A. 330.

It follows that the judgment and the order of October 5, 1916, denying the motion to remand, must be reversed, and the District Court is instructed to grant the motion to remand.

LEARNED HAND, District Judge (dissenting). I understand that all the court agree that Ex parte Tobin, 214 U. S. 506, 29 Sup. Ct. 702, 53 L. Ed. 1061, and Ex parte Nicola, 218 U. S. 668, 31 Sup. Ct. 228, 54 L. Ed. 1203, did not proceed upon the theory that mandamus was not the proper remedy. At the time they were decided the Supreme Court was passing upon questions of jurisdiction in this way as is shown in Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264. It was only in Ex parte Harding, 219 U. S. 363, 31 Sup. Ct. 324, 55 L. Ed. 252, 37 L. R. A. (N. S.) 392, that the practice ceased, and this was after both cases had been decided. We all start, therefore, with the assumption that when an alien sues a nonresident citizen in a state court the defendant may remove the cause to the District Court for the district in which the suit is brought. That must be the court for the "proper district," therefore, under section 28 of the Judicial Code, and it is a court in which by hypothesis the alien could not have originally brought the suit under section 51. The last phrase of that section, in my judgment, does no more than add another court

of possible original jurisdiction when the plaintiff is a citizen; that is, the District Court of the district where he lives. As to other District Courts the situation seems to me to be precisely the same as when an alien is concerned. At last, I can see no difference between the two cases in respect of any such court. Of course, this does involve the conclusion that Ex parte Tobin, supra, overruled Re Moore, 209 U. S. 490, 28 Sup. Ct. 706, 52 L. Ed. 904, 14 Ann. Cas. 1164, and it is certainly strange, if that was the purpose, that nothing was said. I feel the force of that argument, yet the difficulties in any other conclusion seem to me insurmountable. These I shall try to state.

I think we should throughout keep in mind the general purpose of these sections of the Judicial Code, which was to give effect to the constitutional provision opening the federal courts to suits between citizens of different states. If the rule were absolute that a defendant may not remove where the plaintiff might not sue originally, then no defendant could ever remove when sued by an alien, because the alien may not seek a federal court under section 51 except where the defendant lives, and the defendant could not under section 28 remove a suit in the state court brought in his own state. Now it might not have been unreasonable to say that a citizen need fear no local bias when sued by an alien in a state court and that removal was unnecessary, but the Supreme Court has said the opposite. Yet the proposed ruling in the case at bar declines, where the plaintiff is a citizen, to adopt this decision of the Supreme Court, and in consequence takes away the right of removal from every defendant when sued by a citizen except in the district—not the state—in which the plaintiff resides. Considering the matter verbally at first, we must observe that section 28 says that the defendant shall be allowed to remove "any civil suit" brought in "any state court" of which "the District Courts are given jurisdiction." The statute does not make the alienage of the plaintiff a condition of removal; the only test is the nonresidence of the defendant. I can understand the reasoning of Re Moore, supra, following sub modo, Re Wisner, supra, that the removal must be to a District Court having "jurisdiction" in the sense in which that term is used in section 51; but I confess I cannot understand that by which it is thought that the same language means "jurisdiction" in the sense of section 51, when a plaintiff is a citizen, but not when he is an alien. And so it seems to me that Ex parte Tobin, supra, necessarily involves the general consequence that removal does not depend upon "jurisdiction" as used in section 51. And if any distinction is to be made in application of the same language, why should it be made in that case only where it is least necessary?

It has sometimes been supposed that Re Moore, supra, indicated that the plaintiff had a valuable right to protect in resisting removal, and it might in consequence be urged that an alien ought to have no such right; yet this seems to me an inversion of ideas. Surely, if the plaintiff has chosen a state court outside of the district of his residence, with whatever inconvenience that involves, that is a strained construction of these sections which regards it as a cognizable right to keep the defendant out of a federal court designed to protect him against a lo-

cal bias he may fear. In fact, the statutes were intended to protect the federal courts from access to suitors who did not really need the constitutional protection, and there would be force, though I submit little force when citizens were plaintiffs, in saying that they should not be open to any suitors of whom one at least was not a resident in the district. That consideration falls, however, as soon as the defendant is allowed to remove against an alien. Such a result incumbers federal courts, if one likes, but in cases where their putative value to a defendant is at a minimum, and relieves them where they ought to operate, at least where they ought much more to operate. In any event I think it pretty clear that the question ought not to be decided upon the assumption that a plaintiff has some rights which an alien has not, in maintaining a suit in a state court when he is not a resident of the district in which he sues. The prime consideration in the whole subject is a tribunal of which the defendant shall not have any ground to fear the local bias. From no reason either in the language of the statutes or their purpose does there seem to me to be a tenable distinction between the cases.

If we consider the results of the proposed ruling in detail, the incongruity becomes more apparent. There are many states all over the Union which have more than one District Court. None of these has original jurisdiction under section 51 unless the plaintiff or the defendant lives there. If the rule still obtains when a citizen sues that there can be no removal to a District Court which had no original jurisdiction, the case suggested by Mr. Miller seems to me an inevitable consequence. A citizen of New York living in Brooklyn sues a Californian in the Supreme Court for the county of New York. He may do so by attachment without ever getting personal service. The defendant cannot remove, but must go on in the state court, because the plaintiff does not live in the Southern district of New York. Certainly it is wholly immaterial to the substantial purpose of the Constitution on which side of the East River the plaintiff may sleep. One might duplicate such instances almost without number. Indeed, even if the plaintiff lived in New Jersey or Connecticut the defendant's desire for a removal might be as just, though the case is less striking. When we add that by conceded authority the Californian, if he was sued by an Englishman, may remove under statutes designed to protect him from local bias, it seems to me we should have clear warrant in the language of Congress for an opposite result in the case at bar.

It follows from Consolidated Tire Co. v. Ferguson, 183 Fed. 756, 106 C. C. A. 330, that the District Court for the Southern District of New York would have had no original jurisdiction of this cause. The plaintiff asks us to question that decision, but it is the law of this circuit.

It is idle to cite all the decisions in the District Courts upon the question I have discussed. They are in entire conflict, a conflict which it seems to me the proposed reversal in this case will hardly serve to allay. I have collected some of them in Doherty v. Smith (D. C.) 233 Fed. 132, and Jackson v. Kenefick (D. C.) 233 Fed. 130; but there were more then, and there have been others since. I should myself

have been glad to certify the question to the Supreme Court; but, as I am not able to persuade my colleagues that there is anything doubtful enough to justify that course, I can do nothing but express my own doubts in this way.

I dissent.