## Pioneer Knitting & Manufacturing Co., Inc., v. Kensington Security Bank and Trust Company

*Blanc & Steinberg,* for plaintiff; *Arthur E. Weil,* for defendant.

LEWIS, J., November 1, 1932.—The Hamilton Knitting Mills, having a claim against the plaintiff for goods sold and delivered, assigned it, on October 15, 1930, to the defendant bank as collateral security for a loan made by the bank to Hamilton Knitting Mills.

On February 7, 1931, the plaintiff deposited with the defendant bank for collection a check in the sum of $100.13. This amount was not collected and received by the defendant until February 17, 1931. The proceeds, less collection charges, amounted to $99.78.

On February 13, 1931, an involuntary petition in bankruptcy was filed against the plaintiff.

At the time of the filing of the petition, the plaintiff had on deposit with the defendant bank a balance of $372.28.

On February 17, 1931, an offer of composition was made by the plaintiff to its creditors. The offer was accepted and the composition settlement was confirmed on March 23, 1931.

There are two questions raised by the plaintiff's instant rule for judgment for want of a sufficient affidavit of defense: (1) Is the claim assigned by Hamilton Knitting Mills to the bank available as an offset pro tanto against the plaintiff's claim for the recovery of its balance on deposit? (2) Where a bank accepts a check for collection and receives the proceeds several days following the institution of a proceeding in bankruptcy against the depositor, may it apply the proceeds of the check toward the debt owing by the depositor?

The first question must be answered in the affirmative.

"It is a well settled rule that a defendant to whom a claim against the plaintiff has been assigned may use it as a set-off or counterclaim in the action, . . . the only prerequisites to its use being that the claim was a subsisting cause of action in the assignor, and that the assignment thereof was made before the action against the assignee was commenced. . . . The prevailing reason for favoring the right of the assignee to use his claim in this manner is that such use has a tendency to prevent circuity of action and a multiplicity of suits. Another reason is that otherwise an insolvent might recover his demand, while the solvent defendant with a valid claim could get nothing except a judgment in the separate and independent suit he was forced to institute against the other party. . . :" 24 R. C. L. 831, 832.

It is contended, however, inasmuch as the bank, had it sued upon the assigned obligation, would have been compelled to do so in the name of the assignor to its use, that the debts were not "mutual" within the meaning of the authorities allowing set-off of "mutual debts."

As far back as Murray v. Williamson, Admin'r, 3 Binney 135, it was held that if the defendant has an equitable demand against the plaintiff, as, for instance, a bond given by the plaintiff to a third person, and by him informally assigned to the defendant, the court will permit him either to set off against the plaintiff's demand or give it in evidence under the plea of payment. Nor is it essential to a set-off that the defendant should be able to sue for the demand in his own name. As was said by Yeates, J., in Murray v. Williamson, Admin'r, supra: "It has been contended, that to enable a man to make a set-off, he must have it in his power to sue in his own name. It lies on the defendant in error to establish this position, which seems to militate against the first principles of justice."

There is nothing in the Defalcation Act of Pennsylvania (1705, 1 Sm. Laws 49) to exclude the use of an assigned claim as a set-off. On the contrary, the act has been uniformly construed to permit it: Murray v. Williamson, Admin'r, supra; Rider v. Johnson, 20 Pa. 190.

The plaintiff depositor maintains that the right of set-off should not be allowed because the assignment by Hamilton Knitting Mills to the bank was made as collateral for a loan. It argues that, "since the assignments were made as collateral, title to the choses in action never legally vested in the bank. If the bank had collected more than $2000 from this account, it certainly would have been under obligation to pay the surplus to Hamilton Knitting Mills. This indicates that the bank was, at most, an agent for Hamilton Knitting Mills in collecting these accounts."

The answer to this contention is to be found in the defendant's affidavit of defense, wherein it is averred that the assignments from Hamilton Knitting Mills to the bank "were made as collateral for a loan of $2000, which has been paid practically by application of plaintiff's deposit to the amount due by it as aforesaid, and the balance from other sources. Defendant has not received from plaintiff or from Hamilton Knitting Mills, or otherwise, anything in excess of the loan of $2000 with interest."

We are of the opinion that "one to whom a chose in action has been assigned as collateral security, in so far as concerns his right to enforce the obligation, stands in the same position as an assignee of the entire interest of the assignor:" 5 C. J. 995, 996; and the rule has been applied to assignments to indemnify and protect the assignor against contingent liability as surety for the assignor: Riggins v. Sass et al., 127 S. W. 1064 (Texas Civ. App.).

In City Bank of New Haven v. Thorp, 78 Conn. 211 (where, under the decisions of that state, the assignee is required to have the entire beneficial interest to entitle him to sue in his own name), it was held that an assignee, under an assignment of an account as collateral security, may sue in his own name, if a sum remains due which is greater than the amount of the assigned account. Of course, "payment of the secured debt by the pledgor to the pledgee operates as a discharge of the pledged securities . . . :" 49 C. J. 1022. The pleadings reveal no suggestion or indication that the principal debt owing by Hamilton Knitting Mills to the bank has been paid, or that the assigned choses in action, if collected, would exceed the balance of the bank's claim. On the contrary, the affidavit of defense, which must be treated as verity for present purposes, specifically asserts that defendant has not received from Hamilton Knitting Mills or any other source any sum in excess of the loan, with interest, for which the choses in action were assigned to the bank.

The second question propounded must be answered in the negative.

The courts have been practically unanimous in holding that title to paper which is deposited for the special purpose of collection does not pass to the bank: First National Bank of Clarion v. Gregg & Co., 79 Pa. 384; Rapp et al. v. National Security Bank, 136 Pa. 426.

It is not necessary, to preserve title in the depositor, expressly to endorse "for collection." The title to paper does not pass to a bank to which it is delivered for collection although endorsed in blank or under unrestricted endorsement: Hackett v. Reynolds, Lamberton & Co., 114 Pa. 328. This rule has been held especially applicable if credit is given by the bank to the depositor upon the deposit of the check or draft, but may be charged off in case of dishonor of the paper: Fifth National Bank v. Armstrong, 40 Fed. 46; Union Safe Deposit Bank v. Strauch, 20 Pa. Superior Ct. 196.

The right to charge back upon dishonor has been held inconsistent with the claim of ownership in the bank: Joppa v. Clark Commission Co., Inc., et al., 132 Ore. 21, 281 Pac. 834.

The relation arising from a deposit as between the bank and depositor, notwithstanding credit given by the bank to its customer for the amount of the check, is that the former becomes the agent of the latter for the purpose of collection: New York Hotel Statler Co., Inc., v. Girard National Bank, 89 Pa. Superior Ct. 537.

While the plaintiff deposited the check in the sum of $100.13 for collection on February 7, 1931, it is admitted that the proceeds were not collected or received by the defendant until February 17, 1931, four days after the filing of the involuntary petition in bankruptcy against the plaintiff.

It is settled law that the trustee in bankruptcy acquires title against all adverse claimants to the proceeds of the deposit as of the date of the institution of the bankruptcy proceedings. The defendant's attempted application of this item toward the liquidation of its claim against the depositor has no warrant in law.

The identical question was raised and decided against the bank in Reed v. Barnett National Bank of Jacksonville, 250 Fed. 983, 41 A. B. R. 419, where it was held that a bank, holding a note against a bankrupt, which fell due prior to the filing of a petition in bankruptcy, cannot set off against it a balance of

the bankrupt's deposits representing funds of the bankrupt received after the petition in bankruptcy was filed.

While the bank has the right of set-off as to the deposit balance on the date when the petition in bankruptcy was filed, this right does not extend to subsequent deposits or to cases where deposits of commercial paper are made prior to but not collected until after the filing of the petition: Citizens' Union National Bank *v*. Johnson, 286 Fed. 527, 2 A. B. R. N. S. 927; Moore *v*. Third National Bank of Phila., 41 Pa. Superior Ct. 497.

In the last-cited case, a petition in bankruptcy was filed against the depositor on January 16, 1908, at 3.45 P. M. On that day, but before 3 P. M., the depositor delivered to the bank for collection sundry checks and received the usual credit in its pass book. The checks were collected in due course on the following day by the bank. The bank claimed the right to retain the greater part of this deposit to cover the bankrupt's indebtedness to it. The court held that the proceeds of the checks deposited could not be properly applied by the bank toward its claim.

The composition, confirmed by the United States district court on March 25, 1931, restored the entire estate to the plaintiff and revested in him the title thereto: Section seventy (f) of the Bankruptcy Act (11 U. S. C. § 110). The bankrupt, by the confirmation of the composition, succeeds to all property rights which its receiver or trustee might have acquired as of the date of the filing of the petition in bankruptcy: In re Frischknecht, 223 Fed. 417, 34 A. B. R. 530.

We are accordingly constrained to hold that defendant's attempt to use its claim as assignee as an offset against so much of the plaintiff's claim as pertains to the deposit which realized the net proceeds of $99.78, is unavailing. To this extent the affidavit of defense is insufficient.

Under the Practice Act of May 14, 1915, P. L. 483, upon a rule for judgment for want of a sufficient affidavit of defense, we are authorized to enter judgment in the amount as to which we deem the affidavit of defense insufficient, with leave to the plaintiff to proceed for the residue: Fulton Farmers Ass'n *v*. Bomberger, 262 Pa. 43.

Judgment is entered in favor of the plaintiff in the sum of $99.78, with interest from February 17, 1931, with leave to the plaintiff to proceed for the balance of its claim.