## GREENBAUM v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1922.)

No. 3594.

1. **Bankruptcy ⬅494—Indictment charging concealment of property held sufficient.**

An indictment charging that defendant knowingly, fraudulently, and feloniously, while he was a bankrupt, concealed from the trustee a large portion of his property belonging to the bankrupt estate, said property consisting of money and merchandise to the value of $30,000, alleges in plain and unambiguous terms all the essential elements of the offense, and is sufficient.

2. **Bankruptcy ⬅491—Confirmation of composition does not bar prosecution for concealment of assets, begun before confirmation.**

An order confirming a composition by a bankrupt with his creditors, which recited that bankrupt had not been guilty of any of the acts which would bar his discharge, did not bar a prosecution of the bankrupt for fraudulently concealing his assets, since it was made in a civil proceeding in which the United States was not a party, and therefore would not be res judicata as to it, even in a civil proceeding, and since the statute provides that offense may be committed by a person while a bankrupt or after his discharge, and the fact that the indictment was returned before the order confirming the composition was entered does not affect the rule.

3. **Bankruptcy ⬅387, 438—Composition supersedes bankruptcy proceedings; books belong to bankrupt after confirmation of composition.**

Under Bankruptcy Act, § 70f (Comp. St. § 9654), the title to the bankrupt's property, including books and documents relating thereto, immediately revests in the bankrupt on the confirmation by the court of a composition with creditors, the composition proceedings having the effect, when confirmed by the court, of superseding the bankruptcy proceeding, so that the trustee in bankruptcy had no further duties to perform after the confirmation, and had no authority to undertake the collection of money due the bankrupt, not included in the composition, and which therefore belonged to the bankrupt.

4. **Criminal law ⬅393(1)—Statements of counsel held not to establish agreement of bankrupt to return books to trustee.**

A statement by the district attorney that the books of a bankrupt had been delivered to the bankrupt's counsel under an agreement they would return the books was not admitted, where the attorneys to whom the books were delivered were not present in court, and the attorney in charge of the trial said he had no knowledge as to what the arrangement

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was, and is insufficient to establish the arrangement, where the trustee was a witness in the case and did not testify to such an arrangement.

5. **Criminal law** ⚖️393(1)—**Consent of district attorney to return of books does not justify order requiring production by bankrupt in prosecution against him.**

The fact that a trustee in bankruptcy obtained consent of the district attorney before he returned to the bankrupt, who had been indicted for concealing property, the books to possession of which bankrupt was entitled after confirmation of his composition with creditors, does not justify an order of the court, on the trial of a criminal charge, requiring the bankrupt to produce the books to be used in evidence.

6. **Criminal law** ⚖️393(1)—**Order requiring production of books held one in criminal prosecution.**

The court, sitting at the trial of a criminal charge against a bankrupt for concealing assets from his trustee, was not sitting as a bankruptcy court, and could not make an order or decree in the bankruptcy proceeding, which had been terminated previously by confirmation of a composition with creditors, so that an order then made requiring the bankrupt to produce his books was an order made in the criminal case.

7. **Criminal law** ⚖️393(1)—**Searches and seizures** ⚖️7—**Discharged bankrupt cannot be compelled to produce books in prosecution for concealment of property.**

A bankrupt, who has been discharged by confirmation of a composition with creditors, so as to become revested with title to his property, including his books, cannot, under Const. Amend. 4, relating to unreasonable searches and seizures, and amendment 5, relating to self-incrimination, be required, in a prosecution against him for fraudulently concealing assets, to produce the books to be used in evidence in the criminal prosecution.

8. **Criminal law** ⚖️393(1)—**Production of books in response to unconditional order is not voluntary.**

Where the court entered an unconditional order requiring defendant, to whom had been returned his books after confirmation of a composition with his creditors, to produce the books in court, his failure to produce the books would have subjected him to punishment by imprisonment for contempt until he complied with the order, so that the production of the books was not a voluntary act on his part.

In Error to the District Court of the United States for the Southern District of Michigan; Arthur J. Tuttle, Judge.

Joseph Greenbaum was convicted of fraudulently concealing property from a trustee in bankruptcy, and he brings error. Reversed and remanded for new trial.

See, also, 249 Fed. 468, 161 C. C. A. 426.

On the 19th day of May, 1916, a petition in involuntary bankruptcy was filed against Joseph Greenbaum in the District Court, Eastern District of Michigan. Southern Division. On June 5, 1916, Greenbaum was adjudged a bankrupt and on the 5th day of July, A. D. 1916, H. C. Moulthrop was appointed trustee of the bankrupt estate and qualified as such trustee on July 6, 1916. Pending the bankruptcy proceeding, the bankrupt made a composition with his creditors, which composition was affirmed and approved by the District Court September 3, A. D. 1918. In the order confirming this composition the court found and adjudged that such composition "was for the best interest of the creditors; that the bankrupt had not been guilty of any of the acts or failed to perform any of the duties which would be a bar to his discharge; that the offer and its acceptance were in good faith and had not been procured by any means, promises, or acts contrary to the acts of Congress relating to bankruptcy." On the same date an order was entered by the District Court directing the referee in bankruptcy to distribute the deposit made by the bankrupt.

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On May 11, A. D. 1917, and prior to the making of this composition and the entry of the order confirming the same, an indictment was returned against the bankrupt, Joseph Greenbaum, charging that on the 5th day of July, A. D. 1916, he did knowingly, fraudulently, and feloniously, while he was a bankrupt, conceal from the trustee a large portion of his property belonging to the bankrupt estate; said property consisting of money and merchandise to the value of $30,000. To this indictment Greenbaum filed a demurrer and also a demand for a bill of particulars, specifying and describing the property that he was charged with having concealed, and the place, time, and manner of such concealment. This bill of particulars was furnished in so far as it was in the power of the government to furnish the same, with the further statement that the information demanded by the defendant was peculiarly within his knowledge and not within the knowledge of the government. The court overruled the demurrer to the indictment and the cause came on for trial, at which time counsel for defendant moved the court to dismiss the indictment and discharge the defendant for the reason that the issue presented by the indictment had been judicially determined by the order of the court confirming the bankrupt's composition with his creditors, which motion was overruled by the court.

At the time the trustee was appointed and qualified the bankrupt's books of account were delivered to him. After the bankrupt had made the composition with his creditors and the order confirming the claim had been entered, the trustee continued in the possession of these books until two or three weeks before the trial. Mr. Moulthrop, the trustee, testified in reference to the return of these books that Mr. Brand of Selling & Brand, attorneys for Greenbaum, got them from him at his office; that they were never returned to witness after Mr. Brand took them away; that, before letting Mr. Brand take them, the witness asked and secured the permission of the district attorney; that afterwards he asked the permission of the district attorney to turn them over to Mr. Mendelsohn, who was also an attorney for Greenbaum; that the trustee understood, at that time, that Mendelsohn and Maloney were acting as attorneys for the defendant, but he cannot remember that they notified him that they wanted the books to prepare the defense, but that he understood that they did want them for that purpose. He further testified that he qualified as trustee on the 6th day of July, 1916; that he had not attempted to exercise any of the duties of trustee until that date; that he did not distribute the composition deposit; that he was not the agent for that purpose; that since the composition with creditors had been made and approved by the court he had tried to collect the balance due on the land contract for the sale of the homestead; that money due on that contract was not a part of the fund of the composition, but belonged to the bankrupt estate; that the balance on the land contract was past due September 3, 1916.

He further testified in response to a question by the court that he was still acting as trustee. Thereupon the court said: "Then I will direct the books be turned in to your possession as trustee. I will ask you to let counsel on both sides have full use of them." In obedience to this order, to which the defendant at the time excepted, he delivered these books to the trustee, and they were used in evidence against the defendant in the trial of this case, which trial resulted in a verdict of guilty and sentence thereon.

J. Shurley Kennary and Wm. F. Connolly, both of Detroit, Mich., for plaintiff in error.

Frederick L. Eaton, Asst. U. S. Atty., of Saginaw, Mich. (Earl J. Davis, U. S. Atty., of Detroit, Mich., on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] The demurrer to the indictment was properly overruled. The indictment discloses in plain and unambiguous terms all the essential ele-

ments of the offense charged. Potter v. U. S., 155 U. S. 438, 15 Sup. Ct. 144, 39 L. Ed. 214; Cochran et al. v. U. S., 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704; Burton v. U. S., 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; U. S. v. Comstock (C. C.) 161 Fed. 644; Ripon Knitting Works v. Schreiber (D. C.) 101 Fed. 810; Stern v. U. S., 193 Fed. 888, 114 C. C. A. 102; In re Lasky (D. C.) 163 Fed. 99.

[2] It is also insisted on behalf of the plaintiff in error that the order confirming the composition is a bar to the prosecution of this indictment. Certainly it is not equivalent to a former acquittal upon a criminal prosecution for the same offense. It was made in a civil proceeding in which the United States was not a party, and therefore the question was not res adjudicata as to it, even in a civil proceeding. The statute provides that this offense may be committed by a person while a bankrupt or after his discharge. This order is, in effect, a discharge in bankruptcy. Clearly, from the language of the statute, a discharge in bankruptcy cannot affect the right of the United States to prosecute the bankrupt for this offense. In many cases the criminal act of concealment may not be discovered until after a composition, or until a discharge in bankruptcy. Such concealment of assets, without knowledge on the part of the court or the creditors, may induce the creditors to accept such composition, and the court to approve the same or discharge the bankrupt, in due course, when no composition is made. The fact that in this case the indictment was returned against the bankrupt before the composition was made with his creditors and confirmed by the court cannot change the law upon this subject even though it might affect the question of the guilt or innocence of the accused.

Whether the order of the court, directing the bankrupt to turn over his private books and accounts to be used in evidence against himself, was or was not an invasion of his constitutional rights under the Fourth and Fifth Amendments to the Constitution of the United States, for the purposes of this case, may be conceded to depend upon whether he was, at that time in the lawful possession and entitled to the possession of these books.

[3] Under the provisions of section 70 of the Bankruptcy Act (Comp. St. § 9654) the trustee, upon his appointment and qualification, became immediately vested, by operation of law, with the title of the bankrupt to all the bankrupt's property and estate, including the documents relating to his property. Under the provisions of section 70f of the Bankruptcy Act, upon the making and entering of the order of the court confirming the composition, the title to the bankrupt's property, including documents relating thereto, immediately revested in the bankrupt. The effect of a composition proceeding under the Bankruptcy Act, when such composition is confirmed by the court, is to supersede the bankruptcy proceeding and substitute the composition proceeding for it. Cumberland Glass Mfg. Co. v. De Witt & Co., 237 U. S. 447, 35 Sup. Ct. 636, 59 L. Ed. 1042.

In this case the referee in bankruptcy was ordered and directed by the court to distribute the composition fund deposited by the bankrupt. The trustee had no further duties to perform in relation to the bank-

rupt's property, except to return the same to him. He had no authority as trustee to collect money still due upon the land contract for the sale of the bankrupt's homestead, which money was not a part of the composition fund. The title to the money due upon that contract at once revested in the bankrupt, free from any claim or right of the trustee, and the trustee's efforts to collect the same were gratuitous, and did not justify him in retaining possession of the bankrupt's property or any part of it. In re Friscknecht, 223 Fed. 417, 139 C. C. A. 11.

[4] It is claimed that a colloquy between counsel justified the court's conclusion that the books were received by the defendant's former attorneys under a promise to return them to the trustee. We think this inference not justified. The district attorney stated that he had been informed by the trustee that these books had been delivered by him to the attorneys for the bankrupt, upon the promise that they would return the same. The trustee was later called as a witness, but he did not testify, either upon direct or cross examination, that any promise whatever was made to him, at the time he delivered these books to the attorneys for the defendant, that they would be returned; and while he understood that counsel desired these books for the purpose of preparing the defense, yet he does not recall that anything was said to him by either of defendant's counsel upon that subject. The receipt given him for these books does not recite the purpose for which they were delivered, nor does it contain any promise on the part of Greenbaum or his attorneys to return same when wanted. Defendant's former attorneys, who received the books and were charged with this arrangement, were not present in court. Defendant's attorney in charge of the trial said he had no knowledge as to what the original arrangement was. This falls far short of an admission, expressly or by silence. If a court has any power to make such an order as was here made, it should be exercised only where there is no doubt as to the facts. The statements of counsel cannot be accepted as evidence justifying an order of this kind, especially where, if the facts were as claimed by counsel, the evidence of such facts was easily obtainable from the witness, who the district attorney claimed in his statement had made such arrangement, and who, of course, would have had knowledge thereof, if any such arrangement had been made. In any event, such an inquiry and such an order for return to the trustee would be for the court of bankruptcy, and could be had and made only after due notice, and after the bankrupt, claiming the possession and right to possession of these books, by reason of the composition with his creditors and the order affirming the same, had been given his day in court.

[5] The further evidence of Mr. Moulthrop, that he secured the consent of the district attorney before delivering these books to counsel for the defendant, does not affect this question in any manner or form whatever. The district attorney was not in possession of these books, and never had any possession or control over them; nor had he attempted while the books were in the possession of the trustee to secure their production in court by a subpœna duces tecum. They were in the possession of the trustee solely and only for the purposes of the bankruptcy proceeding, and when that bankruptcy proceeding was su-

perseded by the composition proceeding, it became the duty of the trustee, regardless of whether the district attorney consented thereto or not, to deliver these books without terms, to Mr. Greenbaum or his counsel upon demand therefor. There is no evidence in this record to show that the trustee did not perform his duty in that respect or that he did not deliver these books to the attorneys for the defendant without exacting any promise that they should be returned to him or to any one else to be used as evidence in this criminal case, or for any other purpose. The conclusion necessarily follows from the uncontradicted evidence of Mr. Moulthrop that the defendant, Greenbaum, was at the time this order was made in possession of these books, and that under the provisions of section 70f of the Bankruptcy Act, he was the owner of the same and entitled to the possession thereof.

[6] The court sitting in the trial of this criminal case was not sitting as a bankruptcy court and was not called upon to make any order or decree in the bankruptcy proceeding which had several months prior thereto been superseded by the composition proceedings. Cumberland Glass Mfg. Co. v. De Witt & Co., supra. Therefore the order made by the court requiring the defendant to produce his private books of account to be used as evidence against himself was an order made in a criminal case and cannot be sustained upon the theory that it was an order made in the civil proceeding in bankruptcy.

The Fourth Amendment to the Constitution of the United States declares that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause. The Fifth Amendment declares that no person shall be compelled in any criminal case to be a witness against himself or be deprived of life, liberty, or property without due process of law.

In Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, it was said by the Supreme Court that both of these amendments relate to the personal security of citizens; they nearly run into and mutually throw light upon each other; that it does not require actual entry upon premises and search for and seizure within the meaning of the Fourth Amendment, but that a compulsory production of a party's private books and papers to be used against himself or his property in a criminal or penal proceeding, or for a forfeiture, is within the spirit and meaning of the amendment.

The Boyd Case, supra, was not a criminal case, but was a proceeding under the customs revenue laws of the United States to declare a forfeiture of defendant's property. The fifth section of the Act of June 22, 1874 (Comp. St. § 5799), entitled "An act to amend the customs revenue laws," etc., authorized a court of the United States, in revenue cases, on motion of the government's attorney, to require the defendant or claimant to produce in court his private books, invoices, and papers, or else the allegations of the attorney to be taken as confessed.

Under the provisions of this section of that act the trial court made an order requiring the defendant Boyd to produce an invoice covering 29 cases of plate glass imported from Liverpool, England, into the port

of New York, and further ordering that upon the failure of the defendant to produce this invoice, the allegation of the government's attorney, as to what these invoices would prove, would be taken as confessed. The court held the section of the statute, under the provisions of which this order was made, unconstitutional and void, and further held that an order of the court requiring the claimants to produce invoices in their possession, to be offered in evidence against him in an action seeking to declare a forfeiture of defendant's property, was in violation of both the Fourth and Fifth Amendments to the Constitution, and that the inspection of the invoice by the government's attorney and its admission in evidence were erroneous and unconstitutional proceedings. This case is perhaps the leading case upon this subject, but it is cited, followed, and approved by many subsequent cases. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; Ballmann v. Fagin, 200 U. S. 186, 26 Sup. Ct. 212, 50 L. Ed. 433; Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652; Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. U. S., 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Amos v. U. S., 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; Gouled v. U. S., 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Flagg v. U. S., 233 Fed. 481, 483, 147 C. C. A. 367; Linn v. U. S., 251 Fed. 476, 480, 163 C. C. A. 470; Bram v. U. S., 168 U. S. 532, 544, 18 Sup. Ct. 183, 42 L. Ed. 568.

It is unnecessary to review the cases above cited in detail. In Ballmann v. Fagin, supra, the court declared in so many words that "a person against whom criminal proceedings are pending is no more bound to produce books of account, than to give testimony to the facts which they disclose." This is the substance and effect of all the other cases as appears from the following extract from the opinion in Gouled v. U. S., supra:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in Boyd v. United States, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524, in Weeks v. United States, 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915C, 1177, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 64 L. Ed. 319, 40 Sup. Ct. Rep. 182) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty, and private property,' that they are to be regarded as of the very essence of constitutional liberty, and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right, to trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly overzealous executive officers."

It is also said in Flagg v. U. S., supra, that—

"What becomes of this defendant, important as it is, sinks into insignificance when compared with the right of the people of the United States to be protected from unlawful search."

[7, 8] It is contended on behalf of the United States that these books were not obtained by any unlawful search and seizure but were obtained by due process. In the quasi criminal case of Boyd v. U. S., supra, a conditional order requiring Boyd to produce the invoice to be used in evidence in that case, or, upon his failure to do so, the statement of counsel for the government should be taken as confessed by him was held by the Supreme Court to be an invasion of the defendant's constitutional rights, for the reason that it virtually compelled the defendant to furnish testimony against himself in violation of both the Fourth and Fifth Amendments. The order in this case is identical with the order in the Boyd Case, except that it unconditionally required the defendant to produce his private books and accounts which were then lawfully in his possession and under his control, to be used in evidence against himself in the trial of this criminal case. His failure to produce the books in obedience to this order would be contempt of court, for which he no doubt would have been punished by imprisonment until he purged himself of the contempt by producing the books. The production of the books, under this order was therefore not a voluntary act on his part. If a defendant in a criminal case can be required by order of court, to produce his private books and accounts, letters or other private documents to be used as evidence against himself, then, as said, in substance, by the Supreme Court in Weeks v. U. S., supra, and Silverthorne Lumber Co. v. U. S., supra, the Fourth and Fifth Amendments would be reduced to a mere form of words.

In the case of Adams v. New York, 192 U. S. 588, 24 Sup. Ct. 372, 48 L. Ed. 575, the question was not raised as to the means by which the evidence was secured. An objection was made to the introduction of the books and papers in evidence on the ground that they were incompetent and irrelevant. The distinction between that case and the other cases is fully explained in the Weeks Case. In Matter of Harris, Bankrupt, 221 U. S. 274, 31 Sup. Ct. 557, 55 L. Ed. 732, the court made an order that the bankrupt should deposit his books of account in the office of the receiver, there to remain in the custody of the bankrupt; the latter to afford the receiver free opportunity to inspect the same, but the receiver to use and permit them to be used only for the purpose of the civil administration of the estate and not for any criminal proceeding. This order was affirmed by the Supreme Court upon the theory that, as the bankruptcy court could have enforced title in favor of the trustee, it could enforce possession ad interim in favor of the receiver, and that, in the properly careful provision to protect the bankrupt from use of the books in aid of prosecution, the bankrupt got all that he could ask. In reply to the claim of Harris that no statute protected him from the knowledge gained from the use of the books to find and gain evidence that might be used against him in a criminal prosecution, the court said: "That is one of the misfortunes of bankruptcy if it follows crime." In that case the order was made in a civil proceeding, the books to be used only for the purpose of the civil administration of the bankrupt estate. The bankruptcy proceedings were still pending, and Harris was not entitled to these books as against his trustee, or as against the ad interim receiver. In this case the bankruptcy pro-

280 F.—31

ceedings had been superseded by the composition proceeding, and the order confirming the composition had revested in the bankrupt, the title and right to the possession of these books. Not only that, but he actually had the possession of them, so that the Harris Case has no application to the question presented in this case, other than it recognizes the rule as announced in Counselman v. Hitchcock, supra.

There are no other assignments of error that it is necessary to discuss in detail. It is sufficient to say that no error intervened in the proceedings and trial prejudicial to the defendant, other than the order directing him to produce his private books of account to be used in evidence against himself, and for which error this judgment is reversed, and cause remanded for a new trial.