## WHITE v. UNITED STATES.
### No. 832.

Circuit Court of Appeals, Tenth Circuit.
Sept. 12, 1933.

McDERMOTT, Circuit Judge, dissenting.

Frank Settle, of Tulsa, Okl. (Hulette F. Aby and William F. Tucker, both of Tulsa, Okl., on the brief), for appellant.

Harry Seaton, Asst. U. S. Atty., of Tulsa, Okl. (John M. Goldesberry, U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

The appellant, defendant in the court below, was convicted by the verdict of a jury upon an indictment charging him with concealing property of a bankrupt corporation of.which he was president, known as Pig Skin Davis, Incorporated (11 USCA § 52), and from the judgment entered thereon he appeals.

There were three counts of the indictment all charging concealment of property belonging to the bankrupt. Before the trial a demurrer and motion to quash was interposed directed to the sufficiency of the indictment, which demurrer and motion were overruled and an exception reserved. The case proceeded to trial and upon its submission to the jury by the trial court the second count was dismissed. The jury returned a verdict of guilty upon the first count and not guilty upon the third count. Upon the first count resulting in conviction, the court interposed a sentence of 18 months in the penitentiary. This appeal brings before the court only the record as it applies to count one of the indictment, upon which the attack is here made. An analysis of this count discloses that, after alleging the bankruptcy of the corporation, the jurisdiction of the court, and the appointment of the receiver, it charges that from the 1st day of July, 1930, to the 10th day of February, 1932, defendant was the qualified and acting president of the bankrupt corporation, and "that the said defendant, as such president, officer and agent of said Pig Skin Davis, Incorporated, a corporation, on or about the 28th day of January, A. D. 1932, down to and including the date of the returning of this indictment, to wit, June 14, 1932, in Tulsa, Tulsa County, State of Oklahoma, and within the *the* jurisdiction of this court, with the intent on the part of him the said defendant, Ernest H. White, to defeat the operation of said Acts of Congress relating to bankruptcy, and Title 11 of the United States Codes Annotated, and in contemplation of bankruptcy, did knowingly, fraudulently and feloniously conceal personal property of said Pig Skin Davis, Incorporated, a corporation, of the total value of Seventeen Thousand Dollars ($17,000), a more particular description thereof being to the Grand Jurors unknown, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

It may be noticed in passing that while the first count alleges the appointment and qualification of a receiver it does not specifically allege that the property was concealed from such receiver, certainly a deficiency in itself fatal. This situation does not apply to counts two and three. However, this is not the basis of the attack upon the indictment on behalf of the appellant. We observe also that in count three, where there was a specific description of the property alleged to have been concealed, there was a verdict of acquittal.

The contention of the appellant is that the first count of the indictment upon which the appellant was convicted is so indefinite that it is insufficient in law and void, in that it does not apprise the defendant of the nature of the charge against him in failing to state what particular personal property of the bankrupt the defendant is charged with having concealed. Reverting again to the language of said first count, it is charged that the appellant "did knowingly, fraudulently and feloniously conceal personal property of the said Pig Skin Davis, incorporated, a corporation, of the total value of Seventeen Thousand Dollars ($17,000), a more particular description thereof being to the Grand Jurors unknown."

The point definitely presented is, as to whether or not the trial court erred in overruling the demurrer to the first count of the indictment. Inasmuch as the subject of definiteness of criminal pleadings is more or less of a controversial one, it may be helpful to examine and quote from a number of selected authorities touching the general rule and also relating to charges under the specific statute upon which the conviction was had in the case at bar.

In 31 C. J. at page 650, the following rule is laid down: "Under the constitution of the United States, which is not a restriction on the states in this respect, and by like provisions in the constitutions of the various states, accused is entitled to be informed of the nature and cause of the accusation against him. Such provisions are not affected by constitutional provisions authorizing the court on appeal in a criminal case to enter a proper judgment. They are a substantial redeclaration of the common-law rule requiring the charge to be set out with precision and fullness, so that defendant may make his defense and avail himself of his conviction or acquittal in a subsequent prosecution for the same offense. Being based on the presumption of innocence, they require such certainty in indictments and informations as will enable an innocent man to prepare for trial; but no greater particularity of allegation than may be of service to accused in understanding the charge and preparing his defense; and while all the elements of, or facts necessary to, the crime charged must be fully and clearly set out, it is not necessary to allege matters in the nature of evidence, or to set out the means by which the crime is accomplished, unless the act is one which may be criminal or otherwise, according to the circumstances under which it is done."

Further, at page 663, the text reads: "A person indicted for a serious offense is presumably innocent, and the sufficiency of an indictment must be tested upon the presumption that he is innocent and has no knowledge of the facts charged against him."

In the much-quoted case of United States v. Cruikshank, 92 U. S. 542, at page 557, 23 L. Ed. 588, Mr. Chief Justice Waite used the following language: "In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause of the accusation.' Amend. VI. In United States v. Mills, 7 Pet. 142 [8 L. Ed. 636], this was construed to mean, that the indictment must set forth the offence 'with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged;' and in United States v. Cook, 17 Wall. 174 [21 L. Ed. 538], that 'every ingredient of which the offence is composed must be accurately and clearly alleged.' It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it

must state the species,—it must descend to particulars. 1 Arch. Cr. Pr. and Pl., 291. The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."

In United States v. Hess, 124 U. S. 483, at page 486, 8 S. Ct. 571, 573, 31 L. Ed. 516, we find the following: "The statute upon which the indictment is founded only describes the general nature of the offense prohibited; and the indictment, in repeating its language without averments disclosing the particulars of the alleged offense, states no matters upon which issue could be formed for submission to a jury. The general, and with few exceptions, of which the present case is not one, the universal rule, on this subject, is that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment or implication, and the charge must be made directly, and not inferentially, or by way of recital."

In Evans v. United States, 153 U. S. 584, at page 587, 14 S. Ct. 934, 936, 38 L. Ed. 830, we read: "Even in the cases of misdemeanors, the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged, not only that the former may know what he is called upon to meet, but that, upon a plea of former acquittal or conviction, the record may show with accuracy the exact offense to which the plea relates. United States v. Simmons, 96 U. S. 360 [24 L. Ed. 819]; United States v. Hess, 124 U. S. 483, 8 S. Ct. 571 [31 L. Ed. 516]; Pettibone v. United States, 148 U. S. 197, 13 S. Ct. 542 [37 L. Ed. 419]; In re Greene [C. C.] 52 F. 104."

The same general rule is reiterated in Bartell v. United States, 227 U. S. 427, at page 431, 33 S. Ct. 383, 384, 57 L. Ed. 583: "It is elementary that an indictment, in or-

der to be good under the Federal Constitution and laws, shall advise the accused of the nature and cause of the accusation against him, in order that he may meet the accusation and prepare for his trial, and that, after judgment, he may be able to plead the record and judgment in bar of further prosecution for the same offense."

In Collins v. United States, 253 F. 609, 612 (C. C. A. 9), the language of the court is as follows: "The question is pertinent here, as it was in the Cruikshank Case, to inquire whether the offense has been described at all. The indictment charges that the defendant did willfully make and convey false reports and false statements, with intent to interfere with the operation and success of the military forces of the United States. But neither the defendant nor the court is advised as to what the reports and statements were, and the allegation is the sheerest conclusion. How was the defendant expected to prepare for his defense, when he was left wholly in the dark as to what reports, or what statements, if any, he had made that the government relied upon for conviction? He may have made many reports and statements, some or all of which may have been consistent with truth, and without any intent to impinge upon the statute, depending upon the particular circumstances under which they were made, and yet he is wholly deprived of the opportunity of concerting his defense until he is confronted with them at the trial. It would be as consistent to charge a man with larceny and attempt to convict him of stealing specific property, when none is described or alluded to in the indictment."

Getting a little nearer to the exact point here under discussion, we find in Joyce on Indictments (2d Ed.), at page 483, the following general statement of the rule: "But it is not sufficient to charge a person with having stolen 'the goods and chattels' of another with no further description, as such an averment does not comply with the well-settled rule of the common law as to certainty, and a mere classification without stating the number and kind of articles named is insufficient."

In the early case of Merwin v. People, 26 Mich. 298, at page 302, 12 Am. Rep. 314, the language of the court is as follows:

"Now, within the rules of certainty required by the common law, for the purposes already explained, it has been long and well settled, that merely charging the defendant with having stolen 'the goods and chattels' of another, is not sufficient (2 E. P. C., 777, 778); and it seems to be equally well settled

that an indictment for stealing money, is not sufficient, if it state only the aggregate amount, without any specification of the number, kind or denomination of the pieces; but that the number of the pieces and their denomination, and whether of silver, gold or copper, should be stated, and regularly the value of each kind, if known. This will sufficiently appear by the cases cited by the counsel for plaintiff in error; and see the authorities collected in 2 Arch. Cr. Pl. (by Waterman), 355, 21; 2 Bish. Cr. Pro., §§ 663 to 668.

"The present information fails utterly to comply with this rule, or to state any excuse for non-compliance. The charge is only of the stealing, etc., 'of the personal property, goods and chattels of John C. Connell,' * * * 'one hundred and thirty-five dollars.'

"It is easy to see that, under this general charge, defendant might have been put upon his trial for a transaction wholly distinct from that intended to be sworn to by the person verifying the information. And unless we are to presume in advance that the defendant is guilty, and must, therefore, know the transaction intended to be proved against him (which would be reversing the legal presumption), what information does it give the defendant, of the nature of the evidence intended to be introduced? And what information for his future protection would the record of his acquittal or conviction afford him?"

In Clary v. Commonwealth, 163 Ky. 48, found on page 51, 173 S. W. 171, 173, in a case charging embezzlement, that court disposed of the matter in the following language:

"To charge one, in an indictment for embezzlement, with fraudulently converting to his own use 'goods, wares, and merchandise' might mean a thousand articles, which can be properly included in a description of that kind, and the one indicted would be required to meet this accusation, without any means of knowing what he might be accused of taking fraudulently, and would necessarily be totally unprepared to meet the accusation, and neither upon the record would a conviction or acquittal be a good bar to a prosecution thereafter for fraudulently converting to his own use some specific article. The pleader, in preparing this indictment, undertook to cure this defect in the decription of the articles alleged to have been converted fraudulently by alleging that a further description of them was to the grand jurors unknown.

"Roberson on Criminal Law and Procedure, § 464, says: 'If it is impossible to give an exact description of the property, the best description practicable should be given, and, if the description given is indefinite, a reason for not giving a better one should be stated.'

"In 25 Cyc. p. 77, referring to an indictment for larceny, it is said: 'Where an offense is substantially set out in an indictment, a matter of description may be omitted, where a good excuse for such omission is given, as that a fuller description is unknown. But, if the description was not unknown as alleged, it is a fatal variance.'

"Neither of these sections from the above authors would justify the upholding of an indictment, and a conviction under it, for a larceny of personal property, where the indictment contained no description of the property at all. It was never intended that any one could be put upon trial or convicted upon a charge of embezzlement, or of larceny of articles of personal property without some kind, or at least a partial, description. It will be observed that the rule as laid down by Roberson only provides that, where an exact description of the property cannot be given, and in Cyc., where a fuller description is unknown, are the instances in which an excuse may be made for it and the indictment upheld. Under the indictment in this case at bar, the jury could not from the evidence apply the articles alleged to have been fraudulently converted to the indictment, and find that they were the same as those referred to in the indictment. Neither would the accused have fair notice of the accusation which he is called upon to answer, or such notice as would be fair and just to him, when called upon to answer a charge of a heinous offense, such as any felony is.

"It is impossible to see how it could be known that the appellant had fraudulently converted personal property owned by the corporation, which he was in the service of, and still it not be known what was the character and description of the property that he had converted.

"The bill of particulars, which, upon motion of appellant, was filed and used upon the trial, did not cure the indictment. A bill of particulars is not designed to uphold an insufficient indictment, but such bill is designed only to be used where the indictment is sufficient upon demurrer, but, in the sound discretion of the trial court, and in furtherance of justice, in order to give the defendant fair notice of what he is called upon to defend, in some states of case, upon motion of the defendant, a bill of particulars may be required."

See, also, People v. Cohen, 8 Cal. 42.

In United States v. Greve, 65 F. 488, at page 490 (D. C. Mo.), a demurrer to the indictment upon an embezzlement was sustained in the following language: "If, in the case at bar, only money was embezzled, the indictment should charge the embezzlement of money only. If money and other funds were embezzled, the amount and value of the several species of the property taken should be stated. The words 'and funds' cannot be rejected as surplusage, for the amount and value stated in the indictment applies to moneys and funds jointly, and, rejecting either, there is no suggestion in the indictment as to the amount or value of the other. The demurrer will be sustained."

Coming down to a consideration of cases in which the particular statute has been invoked in the case at bar, is found the case of United States v. Lynch, 11 F.(2d) 298 (D. C. La.), where the charge in the indictment was that of concealing certain goods, wares, merchandise, moneys, funds, credits, and other things of value, a further and more particular description thereof being to the grand jurors unknown. In respect to this indictment, at page 299 of 11 F.(2d), the trial court said:

"There is not the slightest attempt either at description or valuation, and if the defendant should go to trial upon the bill as it stands, I can see no reason why the government (except for the objection that the bill does not charge sufficient facts to admit any proof) could not probe as thoroughly into the affairs of the defendant on the trial as might have been done at a creditors' meeting in the bankruptcy proceedings, discovering what it might, and holding him responsible under the charge for such as should be proven, and then, at some future time, upon discovery, still hale him into court for other omissions or concealments from his trustee.

"The grand jury must have had before it some evidence tending to show that the accused had withheld or concealed his assets from his trustee, else it could not have charged him with this serious offense."

In Reimer-Gross Co. v. United States, 20 F.(2d) 36 (C. C. A. 6), a case of similar character was fully discussed with a liberal citation of authorities. At pages 37, 38, and 39 of 20 F.(2d) appear the following:

"Every term used—i. e., goods, wares, merchandise, money, credits, and other things of value—is general. The first three would

include everything kept in a store or subject to any kind of mercantile trade. 'Money credits' is even more indefinite and general, and 'other things of value' is so indescribably broad as to be practically all-embracing. None of them signifies anything specific, or is susceptible of a limited class identification.

"Section 29b of the Bankruptcy Act (Comp. St. § 9613 [11 USCA § 52 (b)]) denounces as an offense the concealment by a bankrupt, from his trustee, 'of the property belonging to his estate in bankruptcy.' *If the word 'property' were substituted for the words 'goods, wares, merchandise, money credits, and other things of value,' the indictment would be hardly more general or less informative than as drawn. It would not, we dare say, be contended that such an indictment in the language of the statute was good.* In Ledbetter v. United States, 170 U. S. 606, 18 S. Ct. 774, 42 L. Ed. 1162, the statute defined 'the offense with the requisite precision'; and in United States v. Hess, 124 U. S. 483, 8 S. Ct. 571, 31 L. Ed. 516, it was said, 'Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.' The latter opinion was cited in Armour Packing Co. v. United States, 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681, where it was again stated that the 'charge must be sufficiently definite to enable him (the accused) to make his defense and avail himself of the record of conviction or acquittal for his protection against further prosecutions. * * * And it is true it is not always sufficient to charge statutory offenses in the language of the statutes, and, where the offense includes generic terms, it is not sufficient that the indictment charge the offense in the same generic terms, but it must state the particulars.' Other cases bearing on the subject are United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; United States v. Simmons, 96 U. S. 360, 24 L. Ed. 819; United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135; Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606. * * *

"In Keslinsky v. United States (C. C. A.) 12 F.(2d) 767, it was held that an indictment charging the bankrupt with concealing certain goods, wares, moneys, merchandise, shoes, and personal property belonging to the bankrupt, when considered in connection with the information furnished the accused by the district attorney, was sufficiently definite. United States v. Greenbaum (D. C.) 252 F. 259, and Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390, were cited in support of the conclusion. In the Greenbaum Case the property that was alleged to have been concealed was women's and children's clothing, ready-to-wear garments, general clothing, dry goods, and merchandise, being the kind and description manufactured and handled by Greenbaum at his place of business, 285 Gratiot avenue, in the city of Detroit. The description was obviously less indefinite than 'goods, wares, merchandise, money credits, and other things of value.' The Dunbar Case arose under a revenue statute, which made it an offense to introduce into the United States 'any goods, wares, or merchandise' subject to duty by law without paying or accounting for the duty thereon. The allegation was that the accused had introduced into this country from Canada 'certain goods, wares, and merchandise, to wit, a large quantity of prepared opium, being about 1,-400 pounds of prepared opium.' In holding the indictment good the court remarked that, while it might not be sufficient to use only the words of the statute, 'goods, wares or merchandise' (the same words used here, with others even more general), in 'describing the property charged to have been smuggled, because they are too general and do not sufficiently identify the property, yet any words of description which make clear to the common understanding the articles in respect to which the offense is alleged are sufficient.'

"Notwithstanding the decision in the Keslinsky Case, and the implications arising from other cases cited by the government, where somewhat analogous questions were decided on the evidence, we do not doubt that the plainest principles of criminal pleading require that an indictment should be sufficiently definite to inform the accused with reasonable certainty with what he is charged. There seems to be nothing in the indictment in question that put the defendant on notice of the articles or things he was charged with concealing. *The concealed property, as we have seen, was referred to in terms almost as broad as the term 'property' itself.* That term is generic and may be divided into innumerable classes; 'goods, wares, and merchandise' are similarly subject to many subdivisions and classifications. They are broad enough to permit proof of almost every species of personal property which one could hold or own. There are no comparative references, from which the character of the prop-

erty could be inferred or separated into articles susceptible of identification." (Italics ours.)

A case strongly relied upon by the appellee is Gerson v. United States (C. C. A.) 25 F.(2d) 49, where the charge was that the defendants conspired to conceal certain merchandise belonging to the estate in bankruptcy of a certain value and the cash received from the sale of such property. In that case the indictment was sustained, but the language of Judge Kenyon at page 53 of 25 F.(2d), sets forth his doubt in regard to the rule. He says: "In view of the conflicting decisions of this court on the subject, it is difficult to know just where the line should be drawn as to the particularity in an indictment in the description of the offense. This indictment is close to the line, but we think it discloses the essential elements of the offense charged, and that the property alleged to be concealed was sufficiently identified to enable accused to know exactly what he was charged with, and to properly make defense."

A number of cases seem to adopt a more liberal rule, and are relied upon by appellee to sustain its contention. Greenbaum v. United States, 280 F. 474 (C. C. A. 6); Keslinsky v. United States, 12 F.(2d) 767 (C. C. A. 5); Kanner v. United States, 21 F.(2d) 285 (C. C. A. 2); United States v. Cohan, 46 F.(2d) 310 (D. C. Pa.); United States v. Goldman, 56 F.(2d) 625 (D. C. Pa.); Hill v. United States, 42 F.(2d) 812 (C. C. A. 4).

It is interesting to note, however, that in each of these cases the charge laid in the indictment is more specific than in the indictment in the case at bar, although the rulings are somewhat contrary to those laid down in the authorities from which excerpts have been taken. In the Greenbaum Case the language of the pleader, in substance, was, that a large portion of the property belonging to the bankrupt estate consisted of money and merchandise of a named value. In the Keslinsky Case the allegation specified certain goods, wares, money, merchandise, shoes, and personal property. In the Kanner Case the description used was of certain moneys and properties, a more particular description being unknown. There the court said on page 287 of 21 F.(2d): "In the case at bar the indictment charges concealment of 'moneys and properties belonging to the estate in bankruptcy,' and the inducement makes it reasonably clear that the property was in part at least 'dress goods.'"

A distinction in this respect from the case at bar will be noticed later. In the Cohan Case the charge was of concealing a large quantity of goods and merchandise of a certain value. In the Goldman Case the defendant was charged with concealing personal property consisting of certain goods, wares, merchandise, and money. The Hill Case is upon a smuggling charge where the term "certain merchandise" was used, but the court held that the bill of particulars was sufficient where it was afterwards certified that the merchandise consisted of whiskey and gin.

It is scarcely conceivable that the statement in the indictment that a more particular description of the property was unknown to the grand jurors can be true, inasmuch as the evidence submitted to the grand jury as the basis for the indictment must have been somewhat specific in regard to the property referred to in the first count. This thought is amply illustrated by the statement of the District Attorney at the beginning of the trial concerning the charge laid in the first count, as found on page 24 of the record: "If your honor please, the concealment, as we charge in the first count, or attempt to charge, is the concealment of the three thousand dollar item represented by the check introduced in evidence, and the fourteen thousand dollars represented by the Treasury Certificates."

It is quite apparent from this that a more particular description of the property was known to the grand jury at the time the indictment was found. It is likewise apparent that the property claimed to have been concealed did not even include merchandise which the bankrupt company was engaged in handling, so as to satisfy the theory of inducement relied on in the Kanner Case, supra.

In United States v. Rhodes, 212 F. 513, at page 517 (D. C. Ala.), the court considered this "to the grand jurors unknown" feature of an indictment, and makes the following observation: "The evidence shows that the character, kind, and description of the goods removed and concealed were known to the grand jury—at least, a large part of such goods. As it appears from the proof that the character, kind, and description of the goods were actually known to the grand jury, there is a fatal variance between the allegations and proof. When this is the case, it is the duty of the trial court to direct a verdict for the defendant when so requested. Duff v. United States, 185 F. 101, 107 C. C. A. 319; Hedderly v. United States, 193 F. 561, 571, 114 C. C. A. 227; Wiborg v. United States, 163 U. S. 632, 16 S. Ct. 1127, 1197,

41 L. Ed. 289; Crumpton v. United States, 138 U. S. 361, 11 S. Ct. 355, 34 L. Ed. 958."

In Merwin v. People, 26 Mich. 298, at page 301, 12 Am. Rep. 314, the court says: "And this allegation, that the name, or other particular fact, is 'unknown to the grand jury,' is not merely formal; on the contrary, if it be shown that it was, in fact, known to them, then—the excuse failing—it has been repeatedly held that the indictment was bad, or that the defendant should be acquitted, or the judgment arrested or reversed.—Rex v. Walker, 3 Camp. 264; 1 Chitty's Cr. Law, 213; Rex v. Robinson, Holt N. P., 595, 596; Blodget v. The State, 3 Ind. 403; and see Commonwealth v. Hill, 11 Cush. [Mass.] 137; Hays v. The State, 13 Mo. 246; Reed v. The State, 16 Ark. 499, and 1 Bish. Cr. Pro. §§ 300 to 302, where the cases are cited and the result given."

If it may be said that there are two schools of judicial thought in regard to the indefiniteness of indictments, we of the Tenth circuit are committed to the more stringent rule, as is evidenced by the able opinions of the learned Senior Circuit Judge Lewis in Jarl v. United States, 19 F.(2d) 891 (C. C. A. 8); and Skelley v. United States, 37 F.(2d) 503 (C. C. A. 10). In the Jarl Case, at page 894 of 19 F.(2d) (spoken while this eminent jurist was a member of the Eighth Circuit Court), appears the following language: "A charge may be good and yet it may be made to appear that in fairness the defendant should be furnished with additional information to prevent surprise, restrict the proof and thus enable him to make reasonable preparation for his defense. It cannot be used to cure an indictment fatally defective. Furthermore, we do not know on what reason, or by what authority a District Attorney can assume to specify the particular offense the grand jury intends to charge, nor do we believe any statement he might make in that respect would be binding as of record on a plea of former jeopardy. He has no power of control or right to change the action of that body.. There are cases in which that practice is appropriate, but the indictment must be good on its face; and that procedure cannot be resorted to, with or without the request of defendant, to amend an indictment which is bad because of a lack of precision, certainty and accuracy in charging the offense. This, we think, is the plain meaning of the authorities that have been cited, whether the offense was known at common law or only statutory and whether it be a felony or only a misdemeanor. The reason and necessity for the rule apply as much to the one as to the other. The roots of the principle are in the common law and we find them embedded in the Constitution."

In the Skelley Case there is a further discussion of the subject at page 504 of 37 F. (2d), as follows: "The Fifth and Sixth Amendments to the Constitution of the United States require that the indictment inform the accused of the nature and cause of the accusation; and that purpose is twofold, it must be sufficiently certain as a pleading to enable the defendant to make his defense, and also sufficiently certain to enable him to plead jeopardy if he should be indicted again. Rosen v. United States, 161 U. S. 29, 34, 16 S. Ct. 434, 480, 40 L. Ed. 606. If indicted a second time a comparison of the two records of the charge would determine without more the plea of former jeopardy. The question raised by the demurrer had repeated consideration in the Eighth Circuit, and two of the judges now sitting participated in some of the cases that applied the established rule. It hardly seems that we should repeat the reasoning found in those cases on which the conclusions were reached. They are, Fontana v. United States [C. C. A.] 262 F. 283; Lynch v. United States [C. C. A.] 10 F.(2d) 947; Myers v. United States [C. C. A.] 15 F.(2d) 977 (dissent of Judge Booth); Jarl v. United States [C. C. A.] 19 F.(2d) 891; Corcoran v. United States [C. C. A.] 19 F. (2d) 901; Partson v. United States [C. C. A.] 20 F.(2d) 127; and Turk v. United States [C. C. A.] 20 F.(2d) 129. The substance of the holding in all of them is, that it is not sufficient to follow the general statutory definition of the crime but that the indictment must differentiate the crime intended to be charged with particularity; thus enabling the defendant to prepare his defense, and if indicted again for the same offense, to sustain his plea of former jeopardy on the record. Thus it has always been the rule, both before and since the adoption of the Constitution: in murder, the name of the victim and something more was necessary to the charge,—in burglary, the building, —in embezzlement, the trust relation,—in forgery, the instrument and name thereto forged,—in perjury, the false testimony or statement, etc. In this way each particularized the offense as a necessary part of the charge, for the double protection stated. And we endeavored to point out in the Jarl Case that a bill of particulars could not supply a necessary element of the charge, nor could the prosecuting officer in that way change or

amend a charge of a grand jury. Additional authority on the point may be found in the opinions in the cases which have been cited."

We believe that the line of authorities referred to as tending to sustain the contention of the appellant in this case amply justifies the conclusion that the charge laid in the first count of the indictment is insufficient. The allegation as to value of the property adds nothing to the definiteness of the charge (Kanner v. United States, supra), so we are left with the remaining description only of personal property. Personal property is any property other than real estate and such term might, as stated by counsel in appellant's brief, include "anything from chickens to air-ships." Certainly such an allegation does not in any sense partake of the nature of definiteness in criminal pleading as required by the leading authorities. If an indictment with the language here found should be sustained, a charge that one committed larceny, embezzlement, or forgery, without more, might well be held sufficient.

██ In our view, the language of Judge Hutcheson in a concurring opinion in Grimsley v. United States (C. C. A.) 50 F.(2d) 509, at page 511, is pertinent to the matter here under discussion. He says:

"The opinion of the majority is an extremely simple and, as I think, correct statement of the principle that two substantial things must concur before a defendant may be convicted of a felony in a court of the United States; (1) He must be charged by indictment with the commission of a federal offense; (2) the offense must be proven against him.

"I have always supposed that as an indictment without proof cannot support a conviction, so proof without indictment cannot.

"That Congress by the Act of February 26, 1919, 28 USCA § 391, either intended or has effected the result that in federal courts proof of a federal offense is now the only matter of substance, that indictment is mere technicality, and may, when proof is ample, be entirely dispensed with, I do not believe.

"No case has yet been found by me which declares that failure to charge the essential element of an offense is a mere technicality; on the contrary, there is general concurrence in the statement that if 'the indictment fails to state facts sufficient to constitute the crime charged, the judgment of conviction cannot, of course, be sustained,' Sonnenberg v. U. S. (C. C. A.) 264 F. 327, 328; Wong Tai v. U. S., 273 U. S. 80, 47 S. Ct. 300, 71 L. Ed. 545; Wishart v. U. S. (C. C. A.) 29 F.(2d) 103,

106; Shilter v. U. S. (C. C. A.) 257 F. 724, and this even in the absence of an attack of any kind upon the indictment in the court below. Sonnenberg v. U. S. (C. C. A.) 264 F. 327, 328.

"Where the indictment has been challenged by demurrer, raising not technicality, but matters of substance, and the demurrer has been erroneously overruled, by that much more is it clear that a conviction upon such indictment must be reversed. Moore v. United States, 160 U. S. 268, 16 S. Ct. 294, 40 L. Ed. 422.

"Technicality and substance are not so confused in my mind as that I can bring myself to believe that failure to charge the substantive elements of a federal offense constitutes 'technical error, defect, or exception which does not affect the substantial rights' of the defendant."

In dealing with laws which are intended equally for the protection of the innocent as well as the punishment of the guilty, too much latitude should not be indulged solely for the purpose of arriving at a desired result in an individual case. The looseness in criminal pleading brought to light in this case should not receive encouragement through judicial sanction. Other points relied upon by appellant need not be noticed.

For the reasons stated, the case will be reversed and remanded, with instructions to the trial court to dismiss the indictment.

McDERMOTT, Circuit Judge (dissenting). ·

I have no quarrel with the general principles of criminal pleading stated in the majority opinion. But it seems to me that two well settled principles are ignored, and that the conclusion is contrary to that reached by other Courts of Appeals that have been confronted with the particular point here involved. Accordingly I record my dissent.

1. That this indictment meets two of the three requisites of a valid indictment is not challenged. It states a public offense; a conviction or acquittal thereunder would bar a further prosecution. The broad language might bar a further prosecution for concealing any of the bankrupt's personal property, and thus afford the defendant more protection than if the indictment were more specific. In any event, the rule is settled that where a charge is indefinite "it is the right of the accused to resort to parol testimony to show the subject-matter of the former conviction, and such practice is not infrequently necessary. United States v. Claflin, 13 Blatchf.

178, 25 Fed. Cas. No. 14,798; Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390; Tubbs v. United States, 44 C. C. A. 357, 105 F. 59." Bartell v. United States, 227 U. S. 427, 433, 33 S. Ct. 383, 385, 57 L. Ed. 583. To the same effect, see Connors v. United States, 158 U. S. 408, 15 S. Ct. 951, 39 L. Ed. 1033, and United States v. Remington (C. C. A. 2) 64 F.(2d) 386.

2. The case is reversed because the charge of concealing "personal property of said Pig Skin Davis, Incorporated, a corporation, of the total value of Seventeen Thousand Dollars' ($17,000), a more particular description thereof being to the Grand Jurors unknown" was not sufficiently definite to enable the defendant to prepare for trial. If that be true—and it is the sole objection to the indictment—the remedy was to apply for a bill of particulars. An authority widely cited on the point is the clear statement of Justice Van Devanter, while a Circuit Judge, in Rinker v. United States (C. C. A. 8) 151 F. 755, 759. The learned Justice said:

"When an indictment sets forth the facts constituting the essential elements of the offense with such certainty that it cannot be pronounced ill upon motion to quash or demurrer, and yet is couched in such language that the accused is liable to be surprised by the production of evidence for which he is unprepared, he should, in advance of the trial, apply for a bill of the particulars; otherwise it may properly be assumed as against him that he is fully informed of the precise case which he must meet upon the trial. 1 Bishop's New Cr. Proc. § 643 et seq.; Wharton, Cr. Pl. & Pr. (9th Ed.) § 702 et seq.; Dunbar v. United States, 156 U. S. 185, 192, 15 S. Ct. 325, 39 L. Ed. 390; Rosen v. United States, 161 U. S. 29, 40, 16 S. Ct. 434, 480, 40 L. Ed. 606; Durland v. United States, 161 U. S. 306, 315, 16 S. Ct. 508, 40 L. Ed. 709; Dunlop v. United States, 165 U. S. 486, 491, 17 S. Ct. 375, 41 L. Ed. 799; United States v. Bennett, 24 Fed. Cas. 1,093, No. 14,-571; Tubbs v. United States, 44 C. C. A. 357, 105 F. 59."

The objection sustained here was denied in Durland v. United States, 161 U. S. 306, 315, 16 S. Ct. 508, 512, 40 L. Ed. 709, Justice Brewer stating that "If defendant had desired further specification and identification he could have secured it by demanding a bill of particulars." And in Kirby v. United States, 174 U. S. 47, 64, 19 S. Ct. 574, 580, 43 L. Ed. 890, the question was reviewed in connection with a failure to aver from whom goods were stolen, and Justice Harlan, holding the indictment valid, said: "If it appears

at the trial to be essential in the preparation of his defense that he should know the name of the person from whom the government expected to prove that he received the stolen property, it would be in the power of the court to require the prosecution to give a bill of particulars." Judge John F. Phillips, speaking for the Eighth Circuit Court of Appeals, in answer to a similar claim, said that "The clear course for the defendant in such situation to pursue, for his proper protection against unpreparedness and surprise, is by timely motion to compel the prosecutor to furnish him with a bill of particulars." These authorities were followed in May v. United States (C. C. A. 8) 199 F. 53, 61, certiorari denied, 229 U. S. 617, 33 S. Ct. 777, 57 L. Ed. 1353; Rimmerman v. United States (C. C. A. 8) 186 F. 307, 310; Cochran v. United States (C. C. A. 8) 41 F.(2d) 193, 198; Lewis v. United States (C. C. A. 1) 295 F. 441, certiorari denied 265 U. S. 594, 44 S. Ct. 636, 68 L. Ed. 1197; Boyett v. United States (C. C. A. 5) 48 F.(2d) 482.

The indictment was returned on June 22, 1932. The trial commenced on October 25, 1932. No good reason is suggested why, if the defendant was in any doubt as to the charge against him, he did not ask for particulars during the intervening four months. Since the defendant testified he sold accounts of the corporation for $17,500 in cash and government bonds which he did not turn over to the receiver, the probabilities are he knew what was intended by "personal property of the value of $17,000." He had the right to ask for particulars, and did not do so. That was his remedy; he has no right to a discharge now on the ground that the indictment was fatally defective. Defense counsel, in the brief here, say they did not ask for particulars because "an indictment cannot be amended by a prosecuting attorney." Quite so. But to make particular that which is general is not to amend an indictment; on the contrary it is the peculiar and only office of a bill of particulars.

3. We are enjoined by statute and controlling authority not to reverse judgments for errors which do not affect the substantial rights of the defendant. 18 USCA § 556; 28 USCA § 391. The decisions have long been in accord. In Armour Packing Co. v. United States, 209 U. S. 56, 84, 28 S. Ct. 428, 436, 52 L. Ed. 681, it was ruled:

"Had it been made by demurrer or motion, and overruled, it would not avail the defendant, in error proceedings, unless it appeared that the substantial rights of the ac-

cused were prejudiced by the refusal to require a more specific statement of the particular mode in which the offense charged was committed. U. S. Rev. Stat. § 1025 [18 USCA § 556]; Connors v. United States, 158 U. S. 408, 411, 15 S. Ct. 951, 39 L. Ed. 1033, 1034. There can be no doubt that the accused was fully advised of, and understood, the precise facts which were alleged to be a violation of the statute."

And so here. Not only is the record barren of any evidence of prejudice, but the defendant does not even claim unfair surprise or inability to prepare for trial. He could not well do so when he testified to the diversion of $17,500 of corporate property, and when he made an elaborate defense based upon his right to appropriate such sum. Apparently every person connected with the transaction told their story at the trial. Charged with concealing "personal property of the value of $17,000" he could hardly have helped knowing that reference was made to the extraordinary sale for $17,500 made on the eve of bankruptcy, the proceeds of which he appropriated to pay an alleged purchase price of real estate for which he had already received payment in stock.

In the absence of any showing or even claim of prejudice because of the broad language of the charge, the defendant should not be relieved from the consequences of the serious offense of concealing property from the representative of creditors who trusted him.

4. Rightly or wrongly, the courts appear to have made a distinction between the particularity necessary in indictments charging larceny, and in indictments charging a bankrupt with concealing property from his creditors. There may be a distinguishing circumstance in the fact that the bankrupt is ordinarily in possession of the bankrupt estate at the time the concealment takes place, and that the identity of the property concealed is more difficult of ascertainment than in larceny from one in possession. The District Court case of United States v. Lynch, 11 F. (2d) 298, is in point and supports the majority opinion. The language of the majority opinion in Reimer-Gross Co. v. United States (C. C. A. 6) 20 F.(2d) 36, also supports the majority opinion.

On the other hand, the Sixth Circuit in Greenbaum v. United States (C. C. A.) 280 F. 474, held an indictment sufficient which described the property concealed as "consisting of money and merchandise to the value of $30,000." In that case, the trial court overruled the demurrer to the indictment, but sustained a demand for a bill of particulars, and the Court of Appeals approved. The Fifth Circuit in Keslinsky v. United States (C. C. A.) 12 F.(2d) 767, 768, sustained an indictment which described the property concealed as "certain goods, wares, moneys, merchandise, shoes, and personal property." In that case an informal bill of particulars disclosed that the bankrupt was charged with the concealment of "some $8,000 or $10,000 worth of merchandise and cash." The indictment in Kanner v. United States (C. C. A. 2) 21 F. (2d) 285, 286, identified the property concealed as "certain moneys and properties then and there belonging to the estate in bankruptcy." The evidence disclosed the disappearance of a large quantity of merchandise and cash just prior to the bankruptcy. The indictment was held good notwithstanding the fact that a bill of particulars was denied, the court expressly disapproving United States v. Lynch, supra. The Fourth Circuit in Saleeby v. United States (C. C. A.) 21 F. (2d) 713, 714, approved an indictment which identified the property concealed as "certain dry goods, clothings, shoes, trade fixtures, and other goods, wares, merchandise, and chattels." In that case a bill of particulars was furnished. The Eighth Circuit in Gerson v. United States (C. C. A.) 25 F.(2d) 49, 52, upheld an indictment which identified the property concealed as "merchandise of the value of $15,945.47, and the cash received from a sale thereof."

The language of these indictments is of course not identical with the language of the indictment at bar, but I see no substantial distinction between the general language used and the general language of this indictment. Certainly the reasoning advanced by these courts is applicable to the case at bar. Upon authority, as well as principle, the judgment of the trial court should be affirmed.

5. The majority opinion believes that it is scarcely conceivable that the grand jurors were honest in the statement that they were not able more particularly to describe the property concealed. It is probably true that when the indictment was returned the grand jurors were advised that the defendant had converted certain accounts of the corporation into cash and negotiable securities of the United States. But the offense charged was not the conversion of these accounts, but the concealment of property from the receiver in bankruptcy at a later date. It is quite possible, and even probable, that when the indictment was returned the grand jurors were not advised as to whether the defendant had converted these liquid securities into

other property between the date of their receipt by the bankrupt and the date of the appointment of the receiver. If the defendant had been charged with concealing the cash and specific securities which he received, and it had then developed that between the date of their receipt and the date of the concealment, the defendant had turned the cash and securities into other property, the case would have failed for lack of proof. I therefore see no ground for assuming that the grand jurors made a false return when they stated that they did not know what the defendant had done with the cash and securities between the date of acquiring them and the date of the appointment of the receiver.

I think the judgment of the trial court should be affirmed.